McLEESE, Associate Judge:
Appellant Richard C. Bartel sued appel-lee Bank of America Corporation, seeking to compel the Bank to honor a lost cashier’s check. The trial court granted summary judgment to the Bank on the ground that Mr. Bartel had failed to proffer admissible evidence from which a reasonable factfinder could find that the check has not already been paid. We reverse and remand for further proceedings.
I.
In the trial court, Mr. Bartel alleged the following. In 1994, Mr. Bartel purchased a cashier’s check in the amount of $30,761 from the Bank’s predecessor in interest. The check was payable to “Dana McKinley or Edna McKinley or Richard Bartel.” The check was intended to serve as consideration for a contemplated business transaction between Mr. Bartel and the McKin-leys. Shortly after the check was issued, Mr. Bartel and Ms. McKinley placed the check in the McKinleys’ fireproof safe, for safekeeping. The McKinleys agreed to hold the check until Mr. Bartel wanted to retrieve the check or request its return. The McKinleys decided not to go ahead with the contemplated transaction, but Mr. Bartel left the check with them in the hope that they might nevertheless come to an agreement.
The contemplated transaction never took place, and Mr. Bartel eventually made unsuccessful efforts to obtain the check from the McKinleys. Ms. McKinley, who was blind and could not open the safe, died in 2008. Mr. McKinley, who had been appointed a guardian due to failing *1045 health, said that he no longer knew the correct combination to the safe. Mr. McKinley also said that he had not moved or touched the check and that the check had not been removed from the house.
In 2009, Mr. Bartel filed an action in Florida seeking to obtain possession of the check. When the safe was eventually drilled open, the check wa's not found inside. Mr. McKinley died in 2011. The check was not listed on the inventories prepared in connection with the McKin-leys’ estates. An inquiry into the McKin-leys’ financial records found no evidence of a deposit other than ordinary pension deposits. The check did not escheat to the State of Maryland and was not found in Maryland records of unclaimed property.
In 2013, Mr. Bartel filed a declaration of loss and demanded that the Bank pay the check. After the Bank refused to pay, Mr. Bartel filed suit in Superior Court. In pertinent part, Mr. Bartel sought relief under D.C.Code §§ 28:3-309 and -312 (2015 Supp.), which establish procedures by which a party can obtain payment of a lost cashier’s check or other negotiable instrument. The trial court granted summary judgment to the Bank. Specifically, the trial court concluded that Mr. Bartel had failed to carry his burden of offering admissible evidence that the check has not already been paid to someone entitled to enforce it.[1]
II.
“To prevail on a motion for summary judgment, a party must demonstrate that there is no genuine issue of material fact and that [it] is entitled to judgment as a matter of law. This court’s review of orders granting summary judgment is de novo, with the court conducting an independent review of the record and applying the same substantive standard used by the trial court. We construe the record in the light most favorable to the party opposing summary judgment.” Boyrie v. E & G Prop. Servs., 58 A.3d 475, 477 (D.C.2013) (citations and internal quotation marks omitted). Because we conclude that neither section 28:3-309 nor section 28:3-312 places on Mr. Bartel the burden of proving that the check has not already been paid, we reverse the grant of summary judgment.
We turn first to section 28:3-309.[2] Under that provision, a person seeking pay *1046 ment of a .lost instrument must demonstrate that he oí she has the right “to enforce ■ the instrument.” D.C.Code § 28:3 — 309(b). Subsection (a) • specifies three requirements for establishing an entitlement to enforce the instrument. First, the person seeking payment must either (A) have been entitled to enforce the instrument at the time possession was lost or (B) have acquired ownership from someone so entitled. D.C.Code § 28:3-309(a)(1). Second, the loss of possession must not be the result of a transfer by the person seeking payment. D.C.Code § 28:3-309(a)(2). Third, the person seeking payment must not be reasonably able to obtain possession of the instrument. D.C.Code § 28:3-309(á)(3). The second and third requirements (non-transfer and unavailability of instrument) plainly do not impose any burden on the person seeking payment to prove that the instrument has not already been paid to a person entitled to enforce the instrument. Although the analysis is more complicated, we conclude that the same is true of the first requirement.
In the present case, Mr. Bartel apparently relies on section 28:3-309(a)(1)(A), which requires that he show that he was entitled to enforce the instrument when he lost possession of the instrument. Under D.C.Code § 28:3-301 (2012 Repl.), the phrase “person entitled to enforce” an instrument includes a holder of the instrument, a non-holder in possession of the instrument, and a person entitled to enforce the instrument under section 28:3-309. Under D.C.Code § 28:1-201(20) (2012 Repl.), one way to qualify as a holder of a negotiable instrument is to be in possession-of an instrument payable to the person. These provisions do not require Mr, Bartel to establish that the check at issue in this case has not already been paid.
Section 28:3-309' functions sensibly under this’reading. Qualifying as a person entitled to enforcé an instrument does not establish a right to payment of the instrument. Rather, the’ Bank in this case can avoid having to pay the cashier’s check if the Bank can establish a defense to payment under D.C.Code § 28:3-308(b) (2012 Repl.). Critically for current purposes, however, section 28:3-308 places the burden on the bank to prove any defense it may have. D.C.Code § 28:3 — 308(b) (person entitled to enforce instrument is entitled to payment unléss “the defendant proves a defense or claim in recoupment”). MoreoVer, prior payment of an instrument is generally treated as an affirmative defense. See, e.g., Household Fin. Co. v. Watson, 522 S.W.2d 111, 114 & n. 1 (Mo.Ct.App.1975) (“Payment is an affirmative *1047 defense.... ”) Estate of Kosuga v. Rockstar Media, LLC, No. 10. Civ. 6628(ER), 2013 WL 1268612, at *6 (S.D.N.Y. Mar. 28, 2013) (“[P]ayment is essentially an affirmative defense, of which the burden of proof rests on the party who pleads it.”); Lawrence’s Anderson on the Uniform Commercial Code § 3-603:28, Westlaw (3d ed. database updated Dec. 2014) (“Payment is an affirmative defense and the burden of proof is on the party asserting it.”). We also note that section 28:3-309(b) precludes the trial court from requiring payment of a, lost instrument unless the person required to pay “is adequately' protected against loss that might occur by reason of a' claim by another person to enforce the instrument. Adequate protection may be provided by any reasonable means.”[3]
For the foregoing reasons, we conclude that section 28:3-309 does not place a burden on Mr. Bartel to prove that the cashier’s check has not previously been paid. We reach the same conclusion as to section 28:3-312, which provides an alternative procedure, available in addition to the procedure established under section 28:3-309, to parties seeking payment of lost cashier’s checks. D.C.Code § 28:3-312(d). Under section 28:3-312’s procedure, the claimant must demand payment from the bank. D.C.Code § 28:3-312(b). Among other requirements, the demand must include a sworn declaration of loss. D.C.Code § 28:3-312(b)(ii). The declaration of loss must state that “(i) the declarer lost possession of a check, (ii) the declarer is the ... payee of the check, in the case of a cashier’s check or teller’s check, (iii) the loss of possession was not the result of a transfer by the declarer or a dawful seizure, and (iv) the declarer cannot reasonably obtain possession of the check....” D.C.Code § 28:3-312(a)(3). Subject, to various timing requirements, a properly submitted claim’ becomes “enforceable.” D.C.Code § 28:3-312(b).
Once the claim is enforceable, “the obligated bank becomes obliged to pay the amount of the check to the claimant if payment of the ’check has not been made to a person entitled to enforce the check.” D.C.Code § 28:3-312(b)(4). This provision is not explicit about whether claimants or banks bear the burden of proof on the issue of prior payment. We conclude that the provision is better read as implicitly imposing the burden on banks. First, information about whether 'a check has already been paid will in general be more readily available to banks than to claimants. See generally, e.g., Riggs Nat’l Bank of Washington, D.C. v. District of Columbia, 581 A.2d 1229, 1249-50 (D.C.1990) (allocating burden of proof on issue to banks because, among other reasons, facts relevant to issue were “more likely to be within the knowledge of the bank”) (brackets and internal quotation marks omitted). Second, as we have already noted, the applicable statutory scheme treats comparable issues as matters of defense. D.C.Code §§ 28:3-309, -308(b).
■ In .sum, we conclude that Mr. Bartel does not have the burden of proving that the cashier’s check in this case has not already been paid. We therefore disagree with the ground upon which the trial court granted summary judgment. In this court, the bank raises several alternative contentions upon which it claims summary judgment could appropriately have been *1048 granted, such as that Mr. Bartel’s declaration of loss under section 28:3-312 was deficient; that Mr. Bartel transferred the cashier’s check to the McKinleys, thereby defeating his claim under both section 28:3-309 and section 28:3-312; and that Mr. Bartel’s claim is barred by laches. Mr. Bartel disputes those contentions. The trial court did not resolve those issues, and we “exercise our discretion to leave [those] issue[s] for resolution by the trial court in the first instance.” Folks v. District of Columbia, 93 A.3d 681, 686 (D.C.2014). See generally, e.g., Jaiyeola v. District of Columbia, 40 A.3d 356, 372 (D.C.2012) (although court has discretion to affirm grant of summary judgment on alternative grounds not decided by trial court, court has “cautioned that it usually will be neither prudent nor appropriate for this court” to do so) (internal quotation marks omitted).
As the dissent notes, this court in some circumstances will affirm a trial court’s ruling on alternative grounds not decided by the trial court. In our -view, that approach is not warranted in this case. With respect to Mr. Bartel’s request for relief under section 28:3-312, the dissent would affirm on the ground that Mr. Bartel’s sworn declaration of loss was deficient in two respects, because the declaration failed to allege both (1) that Mr. Bar-tel lost possession of the check and (2) that the loss of possession was not the result of a transfer by Mr. Bartel. As to the first asserted deficiency, however, the Bank did not raise either in the trial court or in this court the specific argument that the declaration failed to allege loss of possession. Affirmance on that ground therefore would not be appropriate. See, e.g., Linen v. Lanford, 945 A.2d 1173, 1180 n. 4 (D.C.2008) (“Generally speaking, matters not properly presented to a trial court will not be resolved on appeal.”) (internal quotation marks omitted); In re Shearin, 764 A.2d 774, 778 (D.C.2000) (points not raised on appeal “are treated as abandoned”).
As to the second asserted deficiency, the Bank did argue that the declaration of loss was inadequate on the issue of transfer. In doing so, however, the Bank appears to have understood the declaration to have been supplemented by Mr. Bartel’s sworn statements in response to interrogatories. Thus, as framed by the Bank, the question is whether the declaration and the response to interrogatories, taken together, were adequate on the issue of transfer. That question also arises under section 28:3-309, and we discuss that question on the merits briefly infra. But it would not be prudent or procedurally fair to affirm on the different ground, relied upon by the dissent, that the declaration must be considered in isolation and so considered is deficient. The Bank has not argued that the declaration must be considered in isolation, the parties have not briefed that issue, the trial court did not decide the issue, and the dissent does not explicitly address the issue.
With respect to Mr. Bartel’s request for relief under section 28:3-309, the dissent first concludes that the undisputed facts establish that Mr. Bartel transferred the check to the McKinleys. See D.C.Code §§ 28:3-309(a)(2) (loss of possession must not be result of transfer). We do not share the dissent’s confidence. As the dissent notes, “transfer” is defined as delivery “for the purpose of giving to the person receiving delivery the right to enforce the instrument.” D.C.Code § 28:3-203(a) (2012 Repl.). Although the dissent states that Mr. Bartel “delivered the check to the McKinleys for the purpose of giving them the right to enforce it,” Mr. Bartel indicated in a sworn statement that he did not intend the McKinleys to have any authority over the check other than to hold it until its return or until the contem *1049 plated transaction was consummated. The dissent asserts that delivery under such circumstances should still be viewed as a “transfer.” The dissent cites no case so holding, however, relying instead on an illustration in a report by the Permanent Editorial Board of the Uniform Commercial Code that neither party cited and that addresses the use of a note as security. See Permanent Editorial Bd. for the Unif. Commercial Code, Application of the Uniform Commercial Code to Selected Issues Relating to Mortgage Notes 11 (2011) (stating that if borrower delivers mortgage note to provider of funds, as security, provider of funds would be entitled to enforce note if delivery of note constituted transfer of note). The illustration poses rather than answers the question whether delivery of a mortgage note in such circumstances would be a transfer. Id. Moreover, the illustration does not discuss section 28:3-309 or address shared possession of a cashier’s check among co-payees. Id. We also observe that the dissent does not fully respond to Mr. Bartel’s arguments as to why giving a cashier’s check to another payee for safekeeping and possible future negotiation should not be viewed as a transfer. We are not inclined to reach out to decide an uncertain question of apparent first impression in the absence of a ruling by the trial court and fuller briefing by the parties.
Second, the dissent concludes that Mr, Bartel failed to establish a material dispute of fact as to whether he was entitled to enforce the check at the time he lost possession, because the check at some point might have been endorsed by the McKinleys so as to permit a third party to enforce the check. This issue too seems far from settled. For one thing, it is unclear to us when Mr. Bartel lost possession of the check, and the dissent does not explicitly address that question. Mr. Bar-tel presumably lost actual possession of the check when the check was put in the McKinleys’ safe, and no one has suggested that the McKinleys had endorsed the check at that point. It is less clear, however, for how long, if at all, Mr. Bartel thereafter had constructive possession of the check. Nor is obvious whether constructive possession counts as possession for purposes of section 28:3-309.
In any event, we think it unclear that Mr. Bartel failed to raise a material dispute of fact on the question whether the McKinleys endorsed the check before Mr. Bartel lost possession of the check. According to Mr. Bartel, (1) he obtained the check with his own funds; (2) he entrusted the check to the McKinleys’ safekeeping in the hope that the check would become consideration for a business transaction; (3) the transaction never occurred; (4) he unsuccessfully demanded return of the check; (5) he has no information that the check was endorsed to a third party or presented to a bank for payment; (6) various searches failed to locate the check; and (7) an analysis of the McKinleys’ financial records showed no transaction suggesting that the McKinleys presented the check for payment or endorsed the check to a third party in exchange for payment. Such evidence would not be dispositive, but the dissent does not explain why a reasonable factfinder could not infer by a preponderance of the evidence that the McKinleys did not violate their alleged agreement with Mr. Bartel by negotiating the check before Mr. Bartel lost possession of the check. Cf. Ruby v. Farmers Mut. Auto. Ins. Co., 274 Wis. 158, 79 N.W.2d 644, 645-48 (1956) (although insurance policy provided that mysterious disappearance of property would presumed to be due to theft, circumstantial evidence supported trial court’s inference that property at issue was lost rather than stolen); cf. generally, e.g., Schwab v. Reilly, 560 U.S. 770, 790, 130 S.Ct. 2652, 177 L.Ed.2d 234 (2010) (noting “the presumption that parties act lawfully”); Rock River Commc’ns, *1050 Inc. v. Universal Music Grp., Inc., 745 F.3d 343, 350 (9th Cir.2014) (“Both California and federal law assume that people act lawfully unless proven otherwise.”).
As the dissent points out, Mr. Bartel stated in his reply brief that the-McKin-leys had the .right to alienate'the check. We do not understand that statement, however, as a concession that .Mr. Bartel would have had no legal complaint against the McKinleys had they negotiated the check contrary to the alleged agreement between Mr. Bartel and the McKinleys. More generally, whether it would have been wrongful for the McKinleys to negotiate the check under the alleged circumstances of this case seems yet another issue better left for consideration in the first instance by the trial court.
The dissent further points out that checks “do not disappear out of safes into thin air.” It does not follow, however, that the check in this case must have been negotiated by the McKinleys, because— among other possibilities — checks can be inadvertently removed from safes and lost or misplaced. ■
Finally, we note that the dissent repeatedly suggests that Mr, Bartel bears the burden under section 28:3-309 of showing that the check was never endorsed by the McKinleys. That too seems unclear at best. It is true that section •28:3-309(a) requires a claimant to establish that he or she “is entitled to enforce the instrument.” But the .provision further indicates that a claimant may meet that requirement by. showing (1) an entitlement to enforce the instrument at the time the claimant lost possession of the instrument, (2) that the loss of possession was not the result of transfer by the claimant or lawful seizure; and (3) that the claimant is unable to obtain possession of the instrument. D.C.Code § 28:3-309(a). On its face, at least, the provision focuses on a claimant’s right of enforcement at the time the claimant loses possession of the instrument, not at the time the instrument later cannot be found by anyone or at the time the claimant brings suit. The provision thus does not appear to place on a claimant the very difficult-task of proving what happened to the instrument after the claimant lost possession of the instrument.
In sum, we are not inclined to affirm the trial court’s denial of relief under sections 28:3-309 and 28:3-312 on the alternative grounds relied upon by the dissent.
Accordingly, the judgment of the Superior Court is reversed and the case is remanded for further proceedings.

So ordered.

Dissenting opinion by Associate Judge THOMPSON at page 1050.

. The trial court and the parties appear to have used the term "negotiate” to refer to the presentation of a cashier’s check to the bank for payment. Strictly speaking, "negotiation” is the transfer of an instrument to another holder, which is distinct from presentation to the bank for payment. See D.C.Code § 28:3-201(a) (2012 Repl.) (defining "negotiation”); D.C.Code § 28:3-501 (2012 Repl.) (defining "presentment”); D.C.Code §§ 28:3-602, -603 (2012 Repl. & 2015 Supp.) (discussing "payment”); see generally, e.g., Lawrence’s Anderson on the Uniform Commercial Code § 3-201:8, Westlaw (3d ed. database updated Dec. 2014) ("Presentment of an instrument for payment is not a negotiation of the instrument.”). We decide in this opinion only the question whether Mr. Bartel bore the burden of proof on the issue of prior payment, concluding that he did not. Although some of the discussion in this opinion is potentially relevant to the related question whether Mr. Bar-tel bore the burden of proving that the McKinleys had not negotiated the check, i.e., transferred possession of the check to a holder, we choose to leave that question for the trial court to consider on remand. We also do not decide whether dismissal or summary judgment would be appropriate on other grounds not reached by the trial court, including laches as well as other statutory requirements under sections 28:3-309 and 28:3-312. Specifically, we do not decide the question whether, given that the Bank bears the burden on the issue of prior payment, the Bank nevertheless can demonstrate an entitlement to summary judgment on that issue.

. Section 28:3-309 provides:
(a) A person not in possession of an instrument is entitled to enforce the instrument if: (1) The person seeking to enforce *1046 the instrument: (A) Was entitled to enforce the instrument when loss of possession occurred; or (B) Has directly or indirectly acquired ownership of the instrument from a person who was entitled to enforce the instrument when loss of possession occurred; (2) The loss of possession was not the result of a transfer by the person or a lawful seizure; and (3) The person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not.amenable to service of process.
(b) A person-seeking enforcement of an instrument under subsection (a) of this section must prove’ the terms of the instrument and the person’s right to enforce the instrument. If that proof is made, section 28:3-308 applies to the case as if the person seeking enforcement had produced the instrument.- The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason' of a claim by another person to enforce the instrument. Adequate protection may be provided by any reasonable means.

. The Bank argues that it no longer has records that might shed light on whether the cashier’s’check has previously been paid, because it retains records for only seven years— one year longer than is required under federal law. We do not view that circumstance as determinative of the burden-of-proof issue, although it is potentially relevant to one or more of the Bank’s defenses.