*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 17-CV-681

MARGARET WILLIAMS, ET AL., APPELLANTS,

v.

JAMES C. KENNEDY, ET AL., APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(CAR-4028-16)

(Hon. Brian F. Holeman, Trial Judge)

(Argued December 21, 2018                    Decided July 11, 2019)

*Charles Gormly* for appellants.

*Dorene Haney* for appellees.

*David Carpman*, *Rachel A. Rintelmann*, and *Jonathan H. Levy* were on the brief for the Legal Aid Society of the District of Columbia, *amicus curiae* in support of appellants.

*Joel Cohn*, *Dennis Taylor*, *Amir Sadeghy*, and *Umar Ahmed* were on the brief for the District of Columbia Office of the Tenant Advocate, *amicus curiae* in support of neither party.

*Karl A. Racine*, Attorney General for the District of Columbia, *Loren L. AliKhan*, Solicitor General, *Caroline S. Van Zile*, Deputy Solicitor General, and *Lucy E. Pittman* were on the brief for the District of Columbia, *amicus curiae* in support of appellees.

Before GLICKMAN and MCLEESE, *Associate Judges*, and NEBEKER, *Senior Judge*.

MCLEESE, *Associate Judge*: Under the Tenant Opportunity to Purchase Act of 1980 (TOPA), D.C. Code § 42-3404.01 et seq. (2012 Repl. & 2018 Supp.), tenants have certain rights if the owner of a rental accommodation wishes to sell the accommodation, including a right to notice and a right of first refusal. Appellant Margaret Williams is a tenant in a four-unit housing accommodation. Appellees James C. Kennedy, Clara Kennedy, and Victor Robinson ("owners") have an interest in the accommodation. Ms. Williams claims that she was denied her TOPA rights in connection with a transaction in 2015 and a proposed transaction in 2016. The trial court granted summary judgment to the owners, ruling that both transactions were not covered by TOPA. We affirm.

## I.    Background

Except as noted, the following facts appear to be undisputed. In 1986, Mr. Kennedy, Barbara Martin, and Mr. Robinson formed a partnership for the purpose of purchasing and operating the accommodation. The partnership agreement granted Mr. Kennedy and Ms. Martin 40% interests in the partnership and Mr. Robinson a

20% interest in the partnership. In the same year, Mr. Kennedy, Ms. Martin, and Mr. Robinson purchased the accommodation. The deed of sale specified that Mr. Kennedy and his wife had a 40% undivided interest in the accommodation as tenants by the entirety; Ms. Martin and her husband had a 40% undivided interest as tenants by the entirety; and Mr. Robinson had a 20% undivided interest.

In 2004, Ms. Martin, whose husband had passed away, quitclaimed her 40% interest in the accommodation to Mr. and Ms. Kennedy. Although it appears that the partnership agreement was amended in 2004, that amended partnership agreement is not part of the record in this court. In 2015, the Kennedys and Mr. Robinson executed a deed conveying some of the Kennedys' interest in the accommodation to Mr. Robinson, leaving Mr. Robinson with an undivided 85% interest in the accommodation and the Kennedys with an undivided 15% interest in the accommodation, as tenants by the entirety. The tenants of the accommodation were not given notice of the 2015 transaction.

Finally, in 2016, the Kennedys decided to transfer their remaining interest in the accommodation to Mr. Robinson. They provided Ms. Williams with notice of that proposed transaction, but took the position that the transaction was not covered by TOPA.

Ms. Williams sued, claiming that the 2015 transaction and the proposed 2016 transaction were sales covered by TOPA and that she had been denied her rights under TOPA. Ms. Williams had assigned TOPA rights to Christopher Hauser and Michael Kiefer, and they also are plaintiffs. (For purposes of this appeal, nothing turns on this assignment, so for ease of reference we hereinafter use "Ms. Williams" to refer to the plaintiffs.) The owners moved for summary judgment, arguing that the transactions at issue were not sales within the meaning of TOPA. The trial court agreed and granted summary judgment to the owners.

## II.    Standard of Review

"To prevail on a motion for summary judgment, a party must demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." *Bartel v. Bank of Am. Corp.*, 128 A.3d 1043, 1045 (D.C. 2015) (brackets and internal quotation marks omitted). "This court's review of orders granting summary judgment is de novo, with the court conducting an independent review of the record and applying the same substantive standard used by the trial court. We construe the record in the light most favorable to the party opposing summary judgment." *Id.*

We decide issues of statutory interpretation de novo. *Facebook, Inc. v. Wint*, 199 A.3d 625, 628 (D.C. 2019). "We first look to see whether the statutory language at issue is plain and admits of no more than one meaning. We will give effect to the plain meaning of a statute when the language is unambiguous and does not produce an absurd result." *Id.* (citation and internal quotation marks omitted). We also consider statutory context and structure, evident legislative purpose, and the potential consequences of adopting a given interpretation. *E.g.*, *J.P. v. District of Columbia*, 189 A.3d 212, 219 (D.C. 2018); *Cherry v. District of Columbia*, 164 A.3d 922, 928 (D.C. 2017); *Frey v. United States*, 137 A.3d 1000, 1004 (D.C. 2016). "We may also look to the legislative history to ensure that our interpretation is consistent with legislative intent." *Facebook*, 199 A.3d at 628 (internal quotation marks and brackets omitted).

As we interpret the provisions of TOPA, we are mindful of the D.C. Council's directive that the "purposes of [TOPA] favor resolution of ambiguity by . . . a court toward the end of strengthening the legal rights of tenants or tenant organizations to the maximum extent permissible under law." D.C. Code § 42-3405.11. We also give weight to TOPA's stated purpose of "strengthen[ing] the bargaining position of tenants . . . without unduly interfering with the rights of property owners to the due

process of law."  D.C. Code § 42-3401.02.

## III.  Analysis

The parties dispute whether the accommodation is properly understood to be owned by individuals or instead by the partnership.  We begin by assuming for current purposes that Ms. Williams is correct that the accommodation has at all times been owned by individuals.  Proceeding from that assumption, we hold that the transactions at issue are not sales within the meaning of TOPA, because the transactions only affected the relative interests of the preexisting owners and did not result in a new third party obtaining an interest in the accommodation.  (We note, however, that for essentially the reasons that follow, we would reach the same conclusion if the accommodation were viewed instead as having been owned by a partnership or a joint venture.)

### A. Statutory Language

It is undisputed that Ms. Williams had rights under TOPA only if the transactions at issue were sales within the meaning of TOPA.  TOPA does not contain a general definition of the terms "sell" or "sale."  Rather, TOPA has three

more specific provisions addressing the meaning of those terms. First, TOPA

provides that the terms "sell" or "sale"

> include, but are not limited to, the execution of any agreement pursuant to which the owner of the housing accommodation agrees to some, but not all, of the following:
>
> (1) Relinquishes possession of the property;
>
> (2) Extends an option to purchase the property for a sum certain at the end of the assignment, lease, or encumbrance and provides that a portion of the payments received pursuant to the agreement is to be applied to the purchase price;
>
> (3) Assigns all rights and interests in all contracts that relate to the property;
>
> (4) Requires that the costs of all taxes and other government charges assessed and levied against the property during the term of the agreement are to be paid by the lessee either directly or through a surcharge paid to the owner;
>
> (5) Extends an option to purchase an ownership interest in the property, which may be exercised at any time after execution of the agreement but shall be exercised before the expiration of the agreement; and
>
> (6) Requires the assignee or lessee to maintain personal injury and property damage liability insurance on the property that names the owner as the additional insured.

D.C. Code § 42-3404.02(b).

Second, TOPA provides that the terms "sell" or "sale" include

> (A) A master lease which meets some, but not all, of the factors described in subsection (b) of this section or which is similar in effect; and

> (B)(i) The transfer of an ownership interest in a corporation, partnership, limited liability company, association, trust, or other entity which owns an accommodation as its sole or principal asset, which, in effect, results in the transfer of the accommodation pursuant to subsection (a) of this section.

D.C. Code § 42-3404.02(c)(1).

Finally, TOPA provides a list of transactions that do not constitute a sale under TOPA. D.C. Code § 42-3404.02(c)(2).

None of these provisions specifically addresses transactions in which multiple individual owners reallocate their interests in an accommodation but do not bring in a new owner. Other provisions of TOPA, however, indicate that such transactions are not sales for purposes of TOPA. Specifically, key substantive rights under TOPA are explicitly tied to the involvement of a third party in the transaction at issue. *See, e.g.*, D.C. Code §§ 42-3404.08 (tenants have right of first refusal during fifteen days after owner has provided tenants with "a valid sales contract to purchase by a third party"), -3404.04 (rights of third parties to purchase are conditional on

exercise of tenants' rights under TOPA); -3404.05(a)(1) (owner must offer to sell to tenant on terms "at least as favorable as th[ose] offered to a third party"). It would be odd for TOPA to consider transactions as sales for purposes of TOPA if those transactions do not give rise to substantive rights under TOPA.

In theory, one could argue that a transaction between two preexisting individual owners of an accommodation is a third-party sale, with the three parties being the selling owner, the buying owner, and the tenant. We do not find that theory plausible. Although this court does not appear to have squarely addressed the issue, authority from other jurisdictions appears to uniformly hold that a transaction between two individual co-owners is not a third-party transaction triggering rights such as a right of first refusal. *See, e.g.*, *Rucker Props., L.L.C. v. Friday*, 204 P.3d 671, 675-76 (Kan. Ct. App. 2009) ("Several other states have addressed the issue of whether a sale or transfer of property between co-owners triggers a right of first refusal, and those states have concluded that there must be a transfer for value to a third party to trigger such a clause.") (citing numerous cases); *Pellandini v. Valadao*, 7 Cal. Rptr. 3d 413, 415-18 (Ct. App. 2003) (same; citing cases).

For these reasons, we conclude that TOPA's text supports a conclusion that transactions in which multiple individual owners reallocate their interests in an

accommodation but do not bring in a new owner are not sales within the meaning of TOPA.

## B. Legislative History

Three aspects of TOPA's legislative history point to the same conclusion. First, the Committee Report on the bill that became TOPA explicitly described TOPA as "requir[ing] the owner with an intent to sell [the] accommodation to a third party, to first offer the accommodation to the tenant or tenants."  D.C. Council, Report on Bill 3-222 at 5 (May 13, 1980); *see also id.* at 7 ("This section requires the owner prior to sale of the accommodation to a third party to first make a bonafide offer of sale to the tenant.").

Second, the Council on at least two occasions has considered amending TOPA to broaden the meaning of "sale" and "sell" in ways that might well have reached at least some transactions among preexisting individual owners.  D.C. Council, Report on Bill 10-243 at 9 & Attachment B at 6 (Feb. 22, 1994) (proposed amendment providing that "the term 'sell' or 'sale' includes any change in fundamental control of ownership of the accommodation"); D.C. Council, Report on Bill 16-50 at 2, 13, Attachment at 2 (Mar. 11, 2005) (discussing proposed amendment that would

"afford[] tenants the opportunity to purchase when the transfer of a controlling economic interest in a real estate transaction takes place"). Those proposals generated opposition. Report on Bill 10-243 at 4 (summarizing opposition); Report on Bill 16-50 at 9 (same). In each case the Council ultimately adopted narrower language that, as previously noted, does not by its terms reach transactions among preexisting individual owners. D.C. Council, Proposed Amendment to Bill 10-243 at 1-2 (May 3, 1994) ("The generality of the term 'change in fundamental control of ownership' may be overly broad and may cause unforeseen problems in the market."; proposing narrower language adopted in D.C. Law 11-31, § 3(i), 42 D.C. Reg. 3239 (Sept. 6, 1995) (now codified as amended at D.C. Code § 42-3404.02(c)(1)(B)(i))); D.C. Law 16-15, § 2(b), 52 D.C. Reg. 6885 (July 22, 2005) (now codified at D.C. Code § 42-3404.02(b), (c)).

Third, in connection with recent amendments to TOPA, the Council once again indicated its understanding that the TOPA right of first refusal is limited to transactions that involve a third party. D.C. Council, Report on Bill 22-315 at 2 (Feb. 23, 2018) ("TOPA requires that owners of residential properties give the tenant an opportunity to purchase the accommodation at a price and terms which represent a *bona fide* offer of sale before they may transfer the property to a third-party.") (internal quotation marks omitted).

The Office of the Tenant Advocate (OTA) relies on a passage in the legislative history of D.C. Law 16-15 that, according to OTA, indicates that the Council viewed TOPA as applicable to "any transfer of a controlling economic interest in property." Report on Bill 16-50 at 6. In fact, that passage merely summarizes Councilmember Graham's opening statement describing the bill as introduced. *Id.* As we have explained, Bill 16-50 was not enacted as introduced. D.C. Law 16-15 as enacted makes no reference to the concept of "controlling economic interest."

We conclude that, taken as a whole, TOPA's legislative history provides substantial additional support for the conclusion that transactions in which multiple individual owners reallocate their interests in an accommodation but do not bring in a new owner are not sales within the meaning of TOPA.

## C. Prior Case Law

This Court has not squarely decided a TOPA case involving a transaction in which multiple individual owners reallocate their interests in an accommodation but do not bring in a new owner. Several of our TOPA cases addressing other scenarios, however, point in favor of the conclusion that such transactions are not sales for

purposes of TOPA. First, we have indicated that -- barring statutory language or legislative history dictating otherwise -- this court should interpret TOPA's statutory right of first refusal in light of the principles applicable to contractual rights of first refusal. *Wallasey Tenants Ass'n, Inc. v. Varner*, 892 A.2d 1135, 1141 (D.C. 2006). As we have previously noted, the judicial authority involving contractual rights of first refusal points against finding a right of refusal under TOPA in the circumstances of this case.

Second, our TOPA cases appear to reflect an assumption that rights under TOPA are triggered only if there is a sale to a third party. *See, e.g.*, *Richman Towers Tenants' Ass'n, Inc. v. Richman Towers*, 17 A.3d 590, 604 (D.C. 2011) ("[W]hen the original owner of a rental accommodation transfers absolute title to another entity, and when he or she does so pursuant to an overarching agreement as a result of which a third party obtains an interest in the accommodation, then a sale has occurred for purposes of TOPA."); *Waterside Towers Resident Ass'n Inc. v. Trilon Plaza Co.*, 2 A.3d 1084, 1085 (D.C. 2010) (TOPA provides tenants with "a right of first refusal when the owner has received an acceptable purchase offer from a third

party").

## D. Policy Considerations

We also consider the practical consequences of including or excluding from TOPA transactions in which multiple individual owners reallocate their interests in an accommodation but do not bring in a new owner. *See generally, e.g.*, *Expedia, Inc. v. District of Columbia*, 120 A.3d 623, 637 (D.C. 2015) ("[T]he rules of statutory interpretation in general . . . require consideration of practical consequences when determining a reasonable construction of the District's . . . law. . . . [T]he reasonableness of a construction can often be tested by considering the consequences of a different one.") (internal quotation marks omitted). We see two significant practical concerns that would arise if TOPA were construed to reach such transactions.

First, there would be a difficult line-drawing question: which transactions among multiple preexisting owners should be covered? Ms. Williams and amici appear to suggest that such transactions would be covered under TOPA if they resulted in the transfer of a controlling interest in the accommodation. There is no direct textual support in TOPA for that position, however, so it is unclear what the

precise doctrinal basis would be for that approach. Moreover, as *amicus* OTA acknowledges, determining whether a given transaction (or set of transactions) transferred a controlling interest in a property can be a complicated and uncertain task. In fact, as we have noted, *ante* Section III.B, such concerns appear to have led the Council to twice forego adopting a controlling-interest approach to the terms "sell" and "sale" under TOPA.

Focusing on Ms. Williams's theory that this accommodation has at all times been held by individuals, applying a controlling-interest test would necessitate inquiry into principles of real-property law. For example, Ms. Williams assumes that whether an individual has a controlling interest in real property turns on the percentages of that individual's undivided interest in the property. Although this court does not appear to have law on the topic, there is authority for the conclusion that, to the contrary, joint owners of undivided real property may have equivalent rights to control of the property even if their interests are unequal. *See, e.g.*, *In re Sturman*, 222 B.R. 694, 709 (Bankr. S.D.N.Y. 1998) ("Each tenant in common, regardless of the percentage of his or her interest, has an equal right to possession of the real property in which he or she owns his or her undivided interest."); *State v. Singley*, 709 S.E.2d 603, 606 (S.C. 2011) (same).

Perhaps one could look in addition to the actual conduct of the owners with respect to the accommodation, or to agreements among the owners -- such as the partnership agreement in this case -- to further determine which owner had what degree of legal or factual control over the accommodation at what times. Such additional inquiries, however, would further complicate matters. With respect to the partnership agreement in this case, for example, Ms. Williams appears to assume that the existence of a controlling interest turns on the percentage of the partnership share. That is not clear either in general or with respect to the original partnership agreement in this case. *See* D.C. Code § 29-604.01(*l*) (2013 Repl.) ("A difference arising as to a matter in the ordinary course of business of a partnership shall be decided by a majority of the partners."); 1986 P'ship Agmt. at 4 (providing that, in absence of consensus among partners, "the majority will rule").

In our view, these complications and uncertainties argue against interpreting TOPA to apply to transactions in which multiple individual owners reallocate their interests in an accommodation but do not bring in a new owner. *Cf. Richman Towers*, 17 A.3d at 615 (rejecting proposed interpretation of TOPA in part because "the statute as so construed would not be workable"); *see generally Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1061 (2019) ("The difficult line-drawing

problems that flow from respondents' interpretation of § 1608(a)(3) counsel in favor of maintaining a clear, administrable rule.").

Second, we share the owners' concern that applying TOPA to transactions such as those at issue in this case would place undesirable burdens on small groups of individuals that wish to join together to own rental accommodations. Whatever the precise form of ownership, if TOPA applies to transactions adjusting the owners' interests in an accommodation but not bringing in any new owner, then tenants might be able to compel membership in a partnership or joint venture or to force partition or sale of the accommodation over the objection of the other remaining owners. *See, e.g.*, D.C. Code § 16-2901(a) (2012 Repl.) (addressing right of tenant in common to obtain partition or sale of real property); *Arthur v. District of Columbia*, 857 A.2d 473, 487 (D.C. 2004) (stating that "a cotenant enjoys a unilateral right of partition").

## E. Ms. Williams's Objections

Taken together, the foregoing considerations in our view strongly support the conclusion that TOPA does not apply to transactions in which multiple individual owners reallocate their interests in an accommodation but do not bring in a new owner. We are not persuaded by Ms. Williams's contrary arguments.

We address three remaining objections raised by Ms. Williams. First, Ms. Williams suggests that the transactions at issue qualify as sales under TOPA because they involved a "relinquish[ment] of possession" of the accommodation. D.C. Code § 42-3404.02(b)(1). It is true that at least the 2016 proposed transaction involved a relinquishment of possession, because the Kennedys proposed to completely give up their interest in the accommodation. But TOPA does not provide that all such relinquishments are sales for purposes of TOPA. Rather, TOPA identifies relinquishment of possession as one of a number of factors that in combination may qualify a transaction as a sale for purposes of TOPA. D.C. Code § 42-3404.02(b)(1) ("'sell' or 'sale' include, but are not limited to, the execution of any agreement pursuant to which the owner of the housing accommodation agrees to *some*, but not all, of the following"; listing six factors) (emphasis added). Moreover, it would be absurd to treat all relinquishments of possession as a sale under TOPA, because then it would be a sale under TOPA each time the owner of an accommodation leased the accommodation to a tenant.

Second, Ms. Williams argues that applying TOPA to transactions such as those at issue in this case is necessary to avoid abuses of TOPA by owners who might creatively structure transactions to circumvent TOPA. We do not agree. For

the reasons we have stated, we conclude that TOPA should not be construed to reach transactions in which multiple individual owners reallocate their interests in an accommodation but do not bring in a new owner. We do not see how that narrow ruling could permit the clever structuring of transactions to frustrate TOPA in the future. The matter might be otherwise if we were also holding TOPA inapplicable to transactions in which one or more new owners are introduced, but we expressly limit our holding in this case to transactions in which no new owner is introduced.

Third, Ms. Williams points out that applying TOPA to transactions such as those at issue in this case would advance one of TOPA's purposes: "strengthen[ing] the bargaining position of tenants." D.C. Code § 42-3401.02. That is true. But for the reasons we have stated, we conclude that the interpretation of TOPA advocated by Ms. Williams is unambiguously foreclosed as a matter of law. TOPA itself makes clear that the Council's interest in benefitting the interest of tenants must yield when TOPA unambiguously requires a different result. D.C. Code § 42-3405.11 (directing courts to "resol[ve] ambiguity" in TOPA provisions so as to benefit tenants to "the maximum extent permissible under law").

For the foregoing reasons, we conclude as a matter of law that the transactions at issue in this case were not sales within the meaning of TOPA. We therefore affirm

the judgment of the Superior Court.

*So ordered.*