Dissenting opinion by Associate Judge Thompson at page 104.
McLeese, Associate Judge:
Appellant Khalil Abdul-Azim sued his former employer, appellee Howard University Hospital (HUH), alleging that HUH discriminated against him on the basis of a perceived disability. The trial court granted summary judgment to HUH. We vacate and remand.
I.
Except as indicated, the following facts appear to be undisputed. Mr. Abdul-Azim began working at HUH in 1998 as a cardiology technician. He had an excellent performance record. In February 2014, Mr. Abdul-Azim was involved in a dispute with a coworker, Renaldon Perkins, regarding the treatment of a patient. Mr. Perkins received a formal letter of reprimand; Mr. Abdul-Azim was not disciplined. Both men returned to work after the incident.
In April 2014, Mr. Abdul-Azim and Mr. Perkins were involved in a second incident that occurred during a heart-catheterization procedure. Mr. Abdul-Azim's account of that incident was that, believing that Mr. Perkins had omitted a procedure, Mr. Abdul-Azim walked over to Mr. Perkins, placed his hand on Mr. Perkins's shoulder, pointed to the monitor, and instructed Mr. Perkins to correct the omission. Mr. Perkins immediately stood up and left the room. Later that day, Mr. Perkins accused Mr. Abdul-Azim of assault. Both Mr. Abdul-Azim and Mr. Perkins were placed on administrative leave that day pending investigation of the alleged assault. HUH's corporate representative later testified that HUH believed Mr. Abdul-Azim was the aggressor in both of the incidents with Mr. Perkins.
After this second incident, Mr. Abdul-Azim's supervisor Tawana Brooks recommended that Mr. Abdul-Azim be required to participate in HUH's Employee Assistance Program (EAP) before returning to work. This recommendation was accepted by HUH's senior employee and labor-relations specialist, Candace Dabney-Smith, who expressed concern about the "[p]ossibility of something else driving what appears to be manic behavior."
HUH also referred Mr. Abdul-Azim to the Employee Health Department for a fitness-for-duty evaluation. The evaluation was conducted in May 2014 by Dr. Elizabeth Nolte. Dr. Nolte found that Mr. Abdul-Azim *101 was "hyperactive" and "manic," that he had "poor concentration," and that his behavior during the evaluation was bizarre. Dr. Nolte concluded that Mr. Abdul-Azim was "[n]ot physically able to safely and efficiently perform the essential functions of the job." Subsequently, Dr. Nolte referred Mr. Abdul-Azim for an evaluation for organic disease or psychiatric disorder, noting that Mr. Abdul-Azim "would benefit from psychiatric evaluation" and that he would remain on leave until evaluated and treated. Dr. Nolte testified that she did not know whether or not Mr. Abdul-Azim was disabled and did not recall whether she had believed that Mr. Abdul-Azim had any particular disorder.
In July 2014, the EAP administrator reported that Mr. Abdul-Azim had completed his EAP sessions and that no further services were recommended. One week later, Mr. Abdul-Azim underwent a psychological evaluation. Dr. Kelurah Comilang noted that Mr. Abdul-Azim was "considered to be fully competent to be released to his[ ] own custody and does not present active danger to self or others." Mr. Abdul-Azim was released without limitations.
Mr. Abdul-Azim delivered a letter from Dr. Comilang to HUH, dated August 2014, stating that Mr. Abdul-Azim was "currently receiving individual therapy services" and that his treatment began in July. Mr. Abdul-Azim did not send the evaluation records to Dr. Nolte, but he testified that he believed this letter would suffice to demonstrate that he had undergone the required evaluation. In October 2014, Ms. Dabney-Smith sent Mr. Abdul-Azim a letter stating that HUH was "unaware" if the requested psychiatric evaluation had occurred, "and if so, the results." That letter directed Mr. Abdul-Azim to contact Dr. Nolte. Mr. Abdul-Azim and his attorneys repeatedly tried to contact Dr. Nolte and HUH, but they initially got no response.
On November 17, 2014, HUH sent a letter to Mr. Abdul-Azim's attorney stating that Mr. Abdul-Azim could not return to work until he had provided "documentation that he was evaluated and treated by a Psychiatrist and has been cleared for duty by Dr. Nolte." After further correspondence back and forth, HUH sent a letter in December 2014 stating that HUH was considering terminating Mr. Abdul-Azim because he had not produced "documentation verifying completion of a psychiatric evaluation." Mr. Abdul-Azim responded with a letter insisting that he had complied with the conditions on his return to work. HUH terminated Mr. Abdul-Azim in January 2015, stating that the termination was for "failure to comply with Hospital directives for return to duty."
Mr. Abdul-Azim sued HUH, alleging in relevant part that HUH took adverse actions against him based on a perceived disability, in violation of the District of Columbia Human Rights Act of 1977 (DCHRA), D.C. Code § 2-1402.11(a)(1) (2016 Repl.). The trial court granted summary judgment for HUH, concluding that there was insufficient evidence to show that HUH regarded Mr. Abdul-Azim as having a disability. Specifically, the trial court concluded that, despite statements by Dr. Nolte and other HUH employees that Mr. Abdul-Azim's behavior was "manic," "erratic," and bizarre, "[w]hatever difficulty [HUH] perceived [Mr. Abdul-Azim] as having, it did not perceive his difficulty as limiting the major life activity of work." Finally, the trial court concluded that there was insufficient evidence that HUH's stated reason for terminating Mr. Abdul-Azim -- his failure to submit documentation of his psychiatric evaluation -- was a pretext for perceived-disability discrimination.
*102 II.
"We review the trial court's grant of a motion for summary judgment de novo , and affirm the judgment only if there is no genuine issue of material fact remaining after taking all inferences in favor of the non-moving party." Night & Day Mgmt., LLC v. Butler , 101 A.3d 1033, 1037 (D.C. 2014). Applying that standard, we reverse.
A.
We conclude that there was a genuine dispute of material fact as to whether HUH perceived Mr. Abdul-Azim as disabled. As relevant here, the DCHRA prohibits an employer from discriminating against an employee wholly or partially on the basis of an actual or perceived disability. D.C. Code § 2-1402.11(a)(1). The DCHRA defines "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of an individual having a record of such an impairment or being regarded as having such an impairment." D.C. Code § 2-1401.02(5A) (2016 Repl.). Under the DCHRA, working is a major life activity. Grant v. May Dep't Stores Co. , 786 A.2d 580, 584 (D.C. 2001).
Dr. Nolte concluded that Mr. Abdul-Azim was hyperactive, manic, and exhibiting bizarre behavior to the point that he was "[n]ot physically able to safely and efficiently perform the essential functions of [his] job." We recognize that "a person is not disabled under the DCHRA if all that he or she can show is an inability to work at a particular job, as opposed to working generally." Woodland v. Dist. Council 20 , 777 A.2d 795, 798 (D.C. 2001). But nothing in Dr. Nolte's conclusions was tied to the particular demands of Mr. Abdul-Azim's position. We conclude that a reasonable factfinder could infer that Dr. Nolte believed that Mr. Abdul-Azim was disabled. We are not persuaded by HUH's arguments to the contrary.
First, HUH points to Dr. Nolte's deposition testimony, which HUH characterizes as that "Dr. Nolte did not perceive or believe that [Mr. Abdul-Azim] suffered from a disability" and did not diagnose Mr. Abdul-Azim with a disability. HUH seems to overstate Dr. Nolte's deposition testimony, which in fact was that she did not know whether or not Mr. Abdul-Azim was disabled and did not recall whether she had believed that Mr. Abdul-Azim had any particular disorder. In any event, a reasonable factfinder could credit Dr. Nolte's written findings over her deposition testimony.
Second, HUH argues that an employer may send an employee for an evaluation without necessarily perceiving the employee as disabled within the meaning of the DCHRA. We do not disagree. In the present case, however, Dr. Nolte did not simply send Mr. Abdul-Azim off to be evaluated. She also made written findings that in our view could reasonably be understood to demonstrate a belief that he was disabled.
For its part, the dissent relies on the theory that an employer cannot perceive an employee as disabled if the employer's view rests on the recommendation of a physician. post at 105-07. We do not view that as an appropriate basis upon which to affirm the trial court's grant of summary judgment. HUH has never relied upon that theory, the trial court did not consider it, and Mr. Abdul-Azim has had no opportunity to brief or otherwise address it. Our cases make clear that, in such circumstances, it would not be "procedurally fair" to affirm a grant of summary judgment on that basis. Bartel v. Bank of Am. Corp. , 128 A.3d 1043, 1048 (D.C. 2015) (declining to affirm grant of summary judgment on alternative ground that trial *103 court did not decide, no one had argued, and parties had not briefed); see, e.g. , Jaiyeola v. District of Columbia , 40 A.3d 356, 372 (D.C. 2012) (although court has discretion to affirm grant of summary judgment on alternative grounds not decided by trial court, court has "cautioned that it usually will be neither prudent nor appropriate for this court" to do so) (internal quotation marks omitted). Our unwillingness to affirm on that basis is increased by our uncertainty about the dissent's theory and its potential application to the alleged circumstances of this case. For example, it is not obvious why the existence of medical advice is logically relevant to whether an employer perceived an employee as disabled. Rather, the existence of such advice seems logically more relevant to, though not necessarily always dispositive of, whether an employer unlawfully discriminated by acting on the basis of such advice. See generally, e.g. , Bay v. Cassens Transp. Co. , 212 F.3d 969, 975 n.2 (7th Cir. 2000) ("[A] company may not be able to escape liability in situations where a plaintiff can demonstrate that the company's reliance on its doctor's medical determination was unreasonable or in bad faith."). For the foregoing reasons, we decline to affirm on the basis of the dissent's theory. If HUH attempts to rely on the theory on remand, we leave it to the trial court to address the matter, including any dispute about whether the theory was timely raised.
Because we conclude that a reasonable factfinder could find that Dr. Nolte believed that Mr. Abdul-Azim was disabled, we need not and do not address Mr. Abdul-Azim's suggestion at oral argument that a claim of perceived-disability discrimination under the DCHRA can properly rest on a "perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A) (2017).
B.
We also conclude that there is sufficient evidence to permit a reasonable factfinder to conclude that the stated basis for Mr. Abdul-Azim's termination -- "failure to comply with Hospital directives for return to duty" -- was a pretext for perceived-disability discrimination. The record is unclear as to exactly what HUH expected Mr. Abdul-Azim to provide to it. At various points, HUH referred to results of a psychiatric evaluation; documentation of evaluation and treatment and clearance for work by Dr. Nolte; and documentation verifying completion of a psychiatric evaluation. Mr. Abdul-Azim submitted a letter from Dr. Comilang stating that Mr. Abdul-Azim was "receiving individual therapy services" and undergoing "treatment," which Mr. Abdul-Azim believed conveyed that he had been examined. There also was evidence that Mr. Abdul-Azim and his lawyers made numerous attempts to contact Dr. Nolte about Mr. Abdul-Azim's return to work, but Dr. Nolte never responded.
It is true, as HUH points out, that Dr. Comilang's letter did not explicitly say that Mr. Abdul-Azim had been evaluated. The letter surely implied as much, though, given the implausibility of a psychologist treating a patient without evaluating the patient first. It is also true that Mr. Abdul-Azim did not submit verification that his treatment had been completed. It does not appear, however, that HUH ever communicated that precise requirement to Mr. Abdul-Azim. Finally, it is true that Mr. Abdul-Azim did not submit verification that he had been cleared by Dr. Nolte to return to work. But Mr. Abdul-Azim submitted evidence that he and his attorneys had been trying to contact Dr. Nolte and she would not respond.
The dissent reasons that Mr. Abdul-Azim's response to HUH was inadequate *104 for a different reason: HUH required the involvement of a psychiatrist, but Mr. Abdul-Azim was seen instead by a psychologist. post at 107. If that was the problem with Mr. Abdul-Azim's response to HUH, HUH did not make that clear to Mr. Abdul-Azim before terminating him. HUH also did not seek summary judgment on that basis, instead using the terms "psychologist" and "psychiatrist" interchangeably in its summary-judgment filings. The dissent quotes the trial court's statement in granting summary judgment that "[t]here may be some overlap between a psychiatric evaluation and sessions of therapy, but [Mr. Abdul-Azim] tried to pass off therapy sessions as a psychiatric evaluation." post at 107. That statement is at best ambiguous, though, because it more naturally suggests that the trial court was focused on the difference between therapy and an evaluation, not on the difference between psychiatrists and psychologists. In this court, moreover, HUH has not clearly argued for affirmance based on a distinction between psychiatrists and psychologists. Rather, HUH continues to apparently use the terms interchangeably and to focus on the absence of explicit evidence of an evaluation and completion of treatment.
In our view, a reasonable factfinder could conclude that Mr. Abdul-Azim was terminated not for a failure to follow proper procedures in his effort to return to work but rather because HUH perceived that he was disabled.
For the foregoing reasons, we conclude that the trial court's stated reasons do not support a grant of summary judgment to HUH. We therefore vacate the judgment of the Superior Court and remand for further proceedings.
So ordered.