*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 23-CV-0413

MA SHUN BELL, APPELLANT,

V.

WEINSTOCK, FRIEDMAN & FRIEDMAN, P.A., *et al.*, APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(2019-CA-008461-B)

(Hon. Yvonne Williams, Motions Judge)

(Argued March 19, 2025                         Decided June 5, 2025)

(Amended August 28, 2025)[*]

*Radi Dennis* for appellant.

*David M. Ross*, with whom *Kevin P. Farrell* and *Daniel R. Coffman* were on the brief, for appellees.

Before HOWARD and SHANKER, *Associate Judges*, and THOMPSON, *Senior Judge.*

Opinion for the court by *Senior Judge* THOMPSON.

---

[*] The opinion for the court was amended in response to appellee's petition for rehearing. The petition is granted to the extent of changes to Part D.1 of the opinion for the court (the discussion of appellant's claim brought under the Debt Collection Law). There also is now included a separate opinion by Judge Shanker.

Opinion by *Associate Judge* SHANKER concurring in part and dissenting in part at page 38.

THOMPSON, *Senior Judge*: This matter returns to the court after a remand.[1] Appellant, Ma Shun Bell, seeks reversal of an order of the Superior Court dismissing her second amended complaint (the complaint) against defendant/appellee Friedman, Framme & Thrush (a law firm formerly known as Weinstock, Friedman & Friedman) (FFT). In essence, the various counts of Ms. Bell's complaint allege that FFT committed an unfair trade practice and an abuse of process by filing a lawsuit on behalf of First Investors Servicing Corporation (FISC)—FFT's client and Ms. Bell's creditor—to recover an alleged deficiency debt that FFT knew could not be lawfully recovered because of procedural defects in the vehicle-repossession process.[2] The Superior Court dismissed each of the five counts of the complaint, ruling that the complaint failed to allege the elements of a Uniform Commercial Code (UCC)[3] violation; that by virtue of its role as FISC's "litigation attorneys," FFT was "immune from suit under the [Consumer Protection Procedures Act

---

[1] *See Bell v. Weinstock, Friedman, & Friedman, P.A.*, 285 A.3d 505, 507 (D.C. 2022) (*Bell III*).

[2] The complaint also includes class allegations that FFT did the same in pursuing deficiency debts or filing collection actions on behalf of FISC as to other borrowers-in default or on behalf of other consumer-credit clients.

[3] *See* D.C. Code § 28:9-601 *et seq*.

(CPPA)][4] and, by extension, [the D.C. Automobile Financing and Repossession Act (AFRA)]";[5] that the complaint does not "articulate[] how [FFT's] conduct violated the [Debt Collection Law (DCL)][6]"; that the complaint failed to state a claim for abuse of process; and that in any event Ms. Bell's claims are barred by res judicata based on a Small Claims Court judgment in favor of FISC, with which, the court found, FFT was in privity.

For the reasons that follow, we conclude that Ms. Bell's DCL cause of action may proceed, but that her other causes of action were properly dismissed. We therefore affirm in part, reverse in part, and remand for further proceedings.

**I.**

In 2012, Ms. Bell purchased a car from a car dealership via an installment sales contract. *See Bell v. First Invs. Servicing Corp.*, 256 A.3d 246, 249 (D.C. 2021) (*Bell I*). Subsequently, the right to collect on the contract was assigned to FISC. *Id.* When Ms. Bell stopped making payments on her car in 2016, FISC repossessed it.

---

[4] The CPPA is codified at D.C. Code § 28-3901 *et seq.*

[5] AFRA is codified at 16 D.C.M.R. § 300 *et seq. See Chamberlain v. Am. Honda Fin. Corp.*, 931 A.2d 1018, 1022 n.8 (D.C. 2007).

[6] *See* D.C. Code § 28-3814. The Debt Collection Law was amended by the Unjust Debt Collection Practices Amendment Act during the course of this litigation. For ease of reference, we refer to it simply as the DCL.

*Id.* Thereafter, on March 29, 2017, through its counsel Weinstock, Friedman & Friedman (now appellee FFT), FISC filed a claim in Small Claims Court seeking to recover the "deficiency balance" ($8,271.41 including retaking and other fees, plus interest) after the repossessed car (allegedly) was sold for less than was owed on the installment contract (yielding what the complaint refers to as a purported "deficiency debt"). *Id.* at 250.

In Small Claims Court, Ms. Bell appeared pro se. *See Bell III*, 285 A.3d at 508.[7] After court-sponsored mediation, she signed a "Stipulation/Settlement" in which she agreed to pay FISC $8,271.41 in monthly installments, with the condition that if she defaulted on the agreement, FISC could apply for entry of judgment for the remaining balance. *Id.* at 507. Ms. Bell eventually defaulted on the agreement, FFT filed FISC's Motion to Enter Judgment Pursuant to Stipulation of Settlement, and the Superior Court entered a judgment in favor of FISC. According to Ms. Bell's brief, the judgment amount was fully paid through garnishment of Ms. Bell's wages.

---

[7] In a second case, *Bell v. First Investors Servicing Corporation*, No. 21-CV-0843, Mem. Op. & J. (D.C. Nov. 9, 2022) (*Bell II*), this court addressed issues pertaining to FISC's status as a "holder" of an interest in the installment sales contract and whether Ms. Bell should be permitted to file her second amended complaint.

In the wake of the foregoing, Ms. Bell, through counsel, filed putative class-action lawsuits against both FISC and FFT. *Bell III*, 285 A.3d at 506-07. She recited essentially the same claims in each suit, alleging that the defendants violated AFRA, the CPPA, the UCC, and the DCL and abused process. In *Bell I*, as pertinent here, this court held that Ms. Bell's claims against FISC (other than the DCL claim, which had been properly dismissed on a separate ground) were barred by res judicata to the extent that they rested on a claim that FISC was not entitled to recover the deficiency balance awarded to it under the Small Claims Court judgment. *See* 256 A.3d at 258. We remanded the case for further proceedings as to the non-barred claims, *id.* at 259 (and that case, which was against FISC only, proceeded to judgment in Superior Court).

In Ms. Bell's suit against FFT in the instant case, the Superior Court initially ruled that res judicata precluded Ms. Bell from asserting any claim against FFT that she could not assert against FISC because FFT, solely by virtue of its role as FISC's attorney during the Small Claims litigation and settlement proceedings, was in privity with FISC. *See Bell III*, 285 A.3d at 507-09. This court reversed, holding that the attorney-client relationship in itself is not sufficient to create privity between lawyer and client for purposes of res judicata. *Id.* at 511 ("[T]he required mutuality of interests will not exist in every circumstance."). We remanded the case to the Superior Court to analyze the mutuality of FISC's and FFT's legal interests. *Id.* We

"ma[d]e no determination regarding whether Ms. Bell's claims m[ight] be dismissed on alternative grounds." *Id.* at 511-12.

On remand, the Superior Court again concluded that there was privity between FISC and FFT because of the contingency-fee arrangement between the two entities, which gave them "a mutual interest in recovery of the deficiency from Ms. Bell" that supported the application of res judicata. The court granted FFT's motion to dismiss, ruling in addition that the UCC claim does not lie against FFT because it was not a secured party; that Ms. Bell's AFRA claims (enforceable through the CPPA) and freestanding CPPA claims against FFT could not proceed because of the CPPA exemption applicable to the professional services of lawyers; that Ms. Bell's allegation that FFT violated the DCL "is not well enough defined to state a claim"; and that the complaint does not state a claim for abuse of process.

This appeal followed.

## II.

"A complaint should be dismissed under [Super. Ct. Civ.] Rule 12(b)(6) if it does not satisfy the pleading standard in [Super. Ct. Civ.] Rule 8(a)[,]" which "requires a pleading to contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Potomac Dev. Corp. v. District of Columbia*, 28 A.3d 531, 543 (D.C. 2011) (quoting Super. Ct. Civ. R. 8(a)). "To survive a motion

to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[,]'" meaning that it must plead factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 544 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  It "must set forth sufficient information to . . . permit inferences to be drawn from the complaint that indicate that [the legal elements of a viable claim for relief] exist." *Williams v. District of Columbia*, 9 A.3d 484, 488 (D.C. 2010) (internal quotation marks omitted).  The plausibility standard requires a plaintiff to allege facts sufficient "to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

This court reviews de novo dismissal of a complaint under Rule 12(b)(6) for failure to state a claim on which relief can be granted. *Potomac Dev. Corp.*, 28 A.3d at 543.  We also review de novo whether a claim is barred by res judicata. *See U.S. Bank, N.A. v. 1905 2nd Street NE, LLC*, 85 A.3d 1284, 1287 (D.C. 2014).  We likewise review de novo the statutory-interpretation issue of whether a defendant is entitled to the protection of a statutory exemption. *See Thorne v. United States*, 55 A.3d 873, 877 (D.C. 2012).

**III.**

We address in turn the various grounds upon which the Superior Court dismissed Ms. Bell's complaint.

**A.     AFRA**

In the first count of her complaint (For Violations of the District of Columbia Automobile Financing and Repossession Act, 16 D.C.M.R. § 300 *et seq*.), Ms. Bell alleges that the notices that were provided in connection with the repossession of her vehicle did not contain the AFRA-mandated disclosures and information.[8]  Notably,

---

[8] 16 D.C.M.R. § 340.4 provides that:

> Within one (1) hour after repossession of a motor vehicle, the individual who performed the repossession shall notify the Metropolitan Police Department of the repossession and shall provide the following data:
>
> (a) The name and address of the registered owner;
>
> (b) The name and address of the repossessor;
>
> (c) The name and address of the holder;
>
> (d) The tag number and description of the vehicle;
>
> (e) The location from which the vehicle was repossessed;
>
> (f) Where the vehicle is located;
>
> (g) The date and time of repossession; and
>
> (h) Other information required by the Metropolitan Police Department.

however, Ms. Bell's allegations relating to her AFRA claim either utilize the passive voice (alleging that Ms. Bell "was never notified of the intended repossession of the Vehicle" and "was never notified that the Vehicle had been repossessed" or "notified where she would be able to collect her personal belongings that were in the Vehicle at the time of repossession"), or they attribute omissions to "the creditor" rather than to FFT ("[t]he creditor did not notify the District of Columbia Metropolitan Police Department after taking the vehicle."). Such formulations in an AFRA complaint against FFT do not satisfy the *Iqbal/Twombly* pleading requirements.[9] They fall short of "rais[ing] a reasonable expectation that discovery will reveal evidence" supporting FFT's involvement in AFRA violations. *Twombly*, 550 U.S. at 556.

---

[9] *Cf. Chatterjee v. CBS Corp.*, No. 6:19-CV-212-REW, 2020 WL 592324 at *9, 2020 U.S. Dist. LEXIS 20346, at *26 (E.D. Ky. Feb. 6, 2020) (noting that defamation plaintiff's allegations regarding the defendant's statements about unnecessary medical procedures that "were performed" were insufficient to meet the pleading standard because they did not denote that the plaintiff "had any involvement with the procedures, as . . .evidenced by the passive voice"); *Tavasci v. Cambron*, No. CIV 16-0461 JB/LF, 2017 WL 3173011 at *24, 2017 U.S. Dist. LEXIS 82649 at *77 (D.N.M. May 31, 2017) (concluding that complaint's passive voice allegations were insufficient under the *Iqbal/Twombly* pleading standard because they did not "make clear exactly *who* is alleged to have done *what* to *whom*" (emphasis in original) (internal quotation marks omitted)); *Emmert v. Clackamas Cnty.*, No. 03:13-cv-01317-YY, 2017 WL 1946321 at *14, 2017 U.S. Dist. LEXIS 5894, at *40 (D. Or. Jan. 12, 2017) (observing that the "use of the passive voice leaves no named actor responsible" and thus fails to comply with *Iqbal/Twombly*).

In short, we agree with FFT and with the Superior Court that Ms. Bell's failure to allege that FFT was actually involved in or responsible for the repossession or sale of her car or the issuance of improper notice(s) rendered the first count of the complaint insufficient to survive dismissal under Superior Court Civ. R. 12(b)(6) for failure to state an AFRA claim against FFT.[10]

## B. UCC Article 9 Claims

In her second cause of action (U.C.C. Article 9 et seq.), Ms. Bell alleges that FFT, in violation of the requirements of UCC Article 9, "did not provide 'reasonably authenticated notice' of sale of the [v]ehicle prior to collecting the alleged deficiency debt[] of Ms. Bell[,]" "did not provide 'reasonably authenticated notice' of [Ms. Bell's] redemption rights . . . prior to collecting the alleged deficiency debt[,]" and "did not provide all the required pre and post-sale notices prior to collecting the

---

[10] Ms. Bell contends that it was error for the Superior Court to grant FFT's motion to dismiss for failure to state a claim as to any of the counts of the complaint because, she argues, Super. Ct. Civ. R. 12(g)(2) permits only one Rule 12(b)(6) motion to be filed and FFT had previously filed such a motion. But Rule 12(g)(2) precludes only "another motion . . . raising a defense or objection that was *available* to the party but omitted from its earlier motion" (italics added). Here, Ms. Bell twice amended her complaint, entitling FFT to file successive motions to dismiss to assert newly available arguments (including updated arguments for dismissal for continued failure to state a claim). Moreover, the Superior Court directed FFT to file a dispositive motion post-remand.

deficiency debt[].”[11]  Ms. Bell also alleges that FFT “did not act in good faith pursuant to U.C.C. § 1-304[.]”

Ms. Bell’s UCC claims are more specific than her AFRA claims, but the Superior Court did not err in dismissing the claims.  The notice provisions of Article 9, Part 6 of the UCC apply to a “secured party” who disposes of collateral following a borrower’s default.  *See* D.C. Code § 28:9-611 (providing that “a secured party that disposes of collateral . . . shall send to [the debtor and other specified interested persons] a reasonable signed notification of disposition”).[12]  A “secured party” is “[a] person in whose favor a security interest is created or provided under a security agreement,” or a person to which accounts have been sold or assigned.  *See* D.C. Code § 28:9-102(a)(73)(A), (D); *id.*, § 28:9-618 (stating that a secondary obligor takes on the duties of a secured party if the secondary obligor (1) receives

---

[11] This court held in *Randolph v. Franklin Investment Co.*, 398 A.2d 340 (D.C. 1979) (en banc), that the “failure to give the requisite notice of resale of collateral under the UCC bars a deficiency judgment altogether.”  *Gavin v. Wash. Post Emps. Fed. Credit Union*, 397 A.2d 968, 969-70 (D.C. 1979).  Thus, the alleged omissions of UCC-required notices are a basis of Ms. Bell’s CPPA and DCL claims that FFT misrepresented that she owed a deficiency debt.  Similarly, the alleged omissions of AFRA-required information in connection with the repossession are likewise a basis of Ms. Bell’s CPPA and DCL claims for misrepresentation of her deficiency debt.  *See* 16 D.C.M.R. § 340.5 (“A deficiency does not arise unless the holder has complied with all of the requirements of [AFRA].”).

[12] “The provisions of D.C. Code Title 28 . . . contain the Uniform Commercial Code . . . as adopted in the District of Columbia.”  *Bartel v. Bank of Am. Corp.*, 128 A.3d 1043, 1050 n.1 (D.C. 2015) (Thompson, J., dissenting).

an assignment of the secured obligation; (2) receives a transfer of collateral and agrees to accept the rights and assume the duties of the secured party; or (3) is subrogated to the rights of a secured party).  The complaint does not allege that a security interest in Ms. Bell's vehicle was created in FFT's favor or that Ms. Bell's account was sold or assigned to FFT.  Even if we assume that FFT could be liable for damages as a non-secured-party "person" under D.C. Code § 28:9-625 for actions it committed as an agent of FISC or some other entity,  the problem for Ms. Bell is that the complaint does not allege that FFT was involved in any way in the repossession or sale of her vehicle or caused such  to occur, or that FFT was otherwise responsible for the repossession or sale of her car or the issuance of improper notice(s).  As the Superior Court remarked, Ms. Bell "does not even assert how [FFT] would have known that FISC was repossessing her car." Thus, even if the omissions of notice as described in the complaint are taken as true, the complaint does not establish that FFT was obligated to comply with the notice requirements of section 28:9-611.  To state the point differently, the allegations of the complaint do not permit an inference to be drawn that the legal elements of a viable UCC claim exist against FFT.  *See Williams*, 9 A.3d at 488; *see also* D.C. Code § 28:9-625 (describing "[r]emedies for *secured party*'s failure to comply with article" (emphasis added)).

As to Ms. Bell's claim that FFT did not act in good faith, the official commentary to section 1-304 of the UCC and section 28:1-304 of the D.C. Code states that the section "does not support an independent cause of action for failure to perform or enforce in good faith" and "does not create a separate duty of fairness and reasonableness which can be independently breached." U.C.C. § 1-304 cmt. 1 (Am. L. Inst. & Unif. L. Comm'n 2022); D.C. Code § 28:1-304 cmt. 1. For this reason, too, the Superior Court did not err in dismissing this aspect of Ms. Bell's complaint.

## C. CPPA Claims

Ms. Bell's third cause of action ("District of Columbia Consumer Procedures and Protections Act, D.C. Code § 3901 et seq") alleges that FFT, "a debt collector that regularly collects debts against consumers[,]" "engaged in deceptive acts and practices in the conduct [of] commerce or trade by engaging in unfair and deceptive debt collection and litigation activities[,]" including by "[r]epresent[ing] that a transaction confers or involves rights, remedies, or obligations which it does not have or involve," "fail[ing] to disclose material facts which have a tendency to mislead about the existence and amount of the alleged debt[,]" duping pro se litigants into signing consent agreements to pay debts not owed[,]" and "fraudulently initiating lawsuits against consumers misrepresenting that they are obligated to pay

deficiency balances or that the debt is viable and collecting payments on barred deficiency debt[.]"[13]

Citing D.C. Code § 28-3903(c)(2)(C), the Superior Court reasoned that FFT's "role as FISC's litigation attorneys render [FFT] immune from suit under the CPPA."[14]    Section 28-3903(c)(2)(C) provides that the District of Columbia's

---

[13] The complaint cites 16 D.C.M.R. § 340.5, which provides that "[a] deficiency does not arise unless the holder has complied with all of the requirements of §§ 340 through 349, including the mandatory and discretionary notice requirements set forth in § 341." *See also* 16 D.C.M.R. § 346.1 ("[A] deficiency does not arise unless the holder has complied with all of the requirements of §§ 340 through 345").

[14] FFT contends that in any event debt collection is not a "trade practice" under the CPPA.  It argues that we should adopt the reasoning of federal district court decisions that have so concluded. *See, e.g.*, *Baylor v. Mitchell Rubenstein & Assocs.*, 55 F. Supp. 3d 43, 54 (D.D.C. 2014) (agreeing that debt collection is not a "trade practice" under the CPPA definition); *Osinubepi-Alao v. Plainview Fin. Servs. Ltd.*, 44 F. Supp. 3d 84, 93 (D.D.C. 2014) ("[T]he plain and unambiguous definition of 'trade practice' does not encompass the act of collecting a debt by an entity that acquired the obligation after default nor does it include efforts by a licensed attorney to collect the debt through litigation.") (internal citations omitted).  Given our conclusion as to the applicability of the lawyers' professional services exemption, we need not definitively resolve this issue, but we will say that we are skeptical of FFT's not-a-trade-practice argument.  Repossession of collateral, which is a main subject of AFRA, is a debt-collection activity, and the legislature has provided that violations of AFRA are enforceable under the CPPA. *See* 16 D.C.M.R. § 340.6 ("Any failure to abide by the requirements of §§ 340 through 349 constitutes an unfair trade practice, the remedies for which include, but are not limited to, those contained in [the CPPA]."); *see also* D.C. Code § 28-3904(dd) (providing that it shall be a violation of the CPPA and an unfair trade practice for any person to "violate any provision of title 16 of the District of Columbia Municipal Regulations").  The legislature has also provided in the CPPA that the District of

consumer-protection agency may not "apply the provisions of [D.C. Code § 28-3905 [pertaining to the filing of complaints about trade practices]" to "professional services of . . . lawyers . . . engaging in their . . . professional endeavors[.]" We have held that by virtue of section 28-3903(c)(2)(C), "the CPPA specifically excludes the professional services of lawyers from its purview[.]" *Pietrangelo v. Wilmer Cutler Pickering Hale & Dorr, LLP*, 68 A.3d 697, 715 (D.C. 2013).[15] We do not doubt that lawyers may engage in some debt-collection activities for which they do not need a law license and that such activities, if they do not qualify as the "professional endeavors" of lawyers, would not be exempt under the CPPA.[16] But the specific activities of FFT about which Ms. Bell complains—the filing of the

---

Columbia Office of Attorney General may bring actions to enjoin violations of the DCL (D.C. Code § 28-3814) which, as its name indicates, establishes requirements applicable to debt collection. *See* D.C. Code § 28-3909(a).

[15] *See also Gomez v. Indep. Mgmt. of Del., Inc.,* 967 A.2d 1276, 1286-88 (D.C. 2009) (explaining that when the Council delinked the scope of the CPPA private action from the CPPA jurisdiction of the consumer-protection agency, it did not intend an expansion of the statute such that it would reach exempted categories such as the professional services of lawyers).

[16] A Maryland case is instructive. *See Andrews & Lawrence Pro. Servs., LLC v. Mills*, 223 A.3d 947, 960 (Md. 2020) (applying the Maryland Consumer Protection Act (CPA), which excludes the "professional services of a . . . lawyer"). In *Mills*, debtors sued a "debt-collection law firm." *Id*. at 950. The question before the court was whether lawyers engaged in debt collection are always engaged in "professional services." The court reasoned that where a lawyer's services "could be provided by any licensed debt collection agency without regard to whether the agency is affiliated with a lawyer or law firm," they do not fall within the professional services exemption under the CPA. *Id*. at 958.

Small Claims Court complaint, negotiation of the settlement/stipulation on behalf of FISC, and filing of the Motion to Enter Judgment—fall comfortably within the exemption. Accordingly, we uphold the dismissal of Ms. Bell's CPPA claims against FFT.[17]

### D.     Debt Collection Law

### 1.     Satisfaction of the pleading standard

The fourth count of Ms. Bell's complaint (District of Columbia Debt Collection Law) begins by reciting various prohibitions set forth in D.C. Code § 28-3814(c), (f), (g), and (z)—provisions of the DCL. The complaint then alleges that FFT "violated each of the provisions above by misrepresenting the existence and amount of a debt and filing false affidavits purporting to verify a debt[,]" by "communicat[ing] with Ms. Bell knowing she was represented by counsel[,]" by "[c]harg[ing] excess fees relating to the alleged debt[,]" by "misrepresent[ing] the

---

[17] That is not to say, of course, that lawyers are not answerable for knowingly pursuing recovery of deficiency amounts that they know may not lawfully be recovered under the consumer-protection laws; such conduct implicates the Rules of Professional Conduct. But the Council of the District of Columbia chose not to make such matters actionable under the CPPA.

legal status of the debt[,]" and by "fraudulently fil[ing] a lawsuit in order to turn the barred deficiency amount to an enforceable judgment[.]"

We agree with FFT and with the Superior Court that some aspects of the fourth count do "not explain how [FFT's] conduct satisfied the elements of any of [the paraphrased] provisions [of the DCL]." While the fourth count asserts that FFT communicated with Ms. Bell while knowing she was represented by counsel, it does not identify when these allegedly improper communications occurred (and the general allegations of the complaint state that FFT communicated with Ms. Bell when she was proceeding pro se in the Small Claims Court). As to FFT's allegedly "filing false affidavits purporting to verify a debt," the affidavit attached to the Small Claims complaint avers that the debt amount described in the other attachments to the complaint was "a just and true statement of the amount owing . . . exclusive of all set-offs and just grounds for defense." We read that statement to mean that the amount stated was the true debt amount, not including (i.e., not reflecting) any amounts to be deducted as set-offs or on account of just defenses. *Cf. Ethos Techs., Inc. v. RealNetworks, Inc.*, 462 F. Supp. 2d 131, 143 (D. Mass. 2006) ("The plain meaning of the phrase 'exclusive of' is '[n]ot including: besides.'" (brackets in original) (quoting *Webster's II New College Dictionary* 399 (3d ed. 2005))). Thus, with the "exclusive of all set-offs and just grounds for defense" phrasing—which seems to acknowledge the possibility of affirmative defenses such as lack of

statutorily mandated notice—the affidavit cannot be said to be false (i.e., the allegation that it is false is not plausible).[18]

Further, in "allegations common to all causes of action," the complaint alleges "[u]pon information and belief" that FFT "regularly report[s] . . . to consumer credit reporting organizations that purported deficiencies . . . are valid debts when, in fact, [Ms. Bell] and other similarly situated persons are not liable for said deficiencies." That allegation implicates the DCL provision that prohibits "false accusations made to another person, including any credit reporting agency, that a consumer has not paid a just debt," D.C. Code § 28-3814(c)(3), but "[p]leading on 'information and belief' is permitted . . . only if the pleading sets forth the specific facts upon which the belief is reasonably based." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1330 (Fed. Cir. 2009). Ms. Bell's complaint does not set forth any such specific facts about FFT's alleged reporting to consumer credit reporting organizations.

---

[18] We note, moreover, that the "exclusive of all set-offs and just grounds of defense" language is prescribed by Small Claims Court Form 11. For that reason, too, we decline to construe the affidavit language as an independent basis for a claim of false or fraudulent representation as to the deficiency debt.

However, we are satisfied that, "liberally interpreted in favor of the pleader[,]"[19] and in conjunction with the "Allegations Common to All Causes of Action," other allegations of the fourth count "nudge[] [Ms. Bell's DCL] claims across the line from conceivable to plausible."[20] *Tingling-Clemmons v. District of Columbia*, 133 A.3d 241, 246 (D.C. 2016) (first alteration in original) (internal quotation marks omitted). Ms. Bell's allegations are sufficient to state a claim that FFT, by filing suit in the Small Claims Court on behalf of FISC, used a "fraudulent, deceptive, or misleading representation or means to collect or attempt to collect [a] claim[]" against Ms. Bell, a consumer, through a "false representation or implication of the character, extent, or amount of a claim against [her], or of its status in any legal proceeding," a violation of D.C. Code § 28-3814(f)(5).[21] Specifically, the complaint recites that the Notice of Repossession sent to Ms. Bell (which was attached to the Small Claims Court complaint filed by FFT) included a charge of

---

[19] *Farmer-Celey v. State Farm Ins. Co.*, 163 A.3d 761, 767 (D.C. 2017).

[20] FFT suggests that this court's affirmance of the Superior Court's dismissal of Ms. Bell's DCL claims against FISC for failure to state a claim requires the same result here. But Ms. Bell's complaint against FISC really did no more than recite what the DCL prohibits without alleging that FISC committed the prohibited conduct. Here, by contrast, the complaint provides the underlying facts necessary to support the inference that a violation occurred.

[21] The quoted language is from the version of Section 28-3814(f)(5) that existed in 2017, when FFT filed the Small Claims action. The language differs only slightly from the current language of Section 28-3814(f)(5).

$850 "for retaking the motor vehicle repossessed," an "excess fee[]" that had to be paid to redeem the vehicle "at any time up until the date it [was] sold." The complaint also cites 16 D.C.M.R. § 340.5 ("A deficiency does not arise unless the holder has complied with all of the requirements of §§ 340 through 349 . . . ."), thereby referencing the mandate of 16 D.C.M.R. § 342.2 that "the total ordinary expenses of retaking shall not exceed one hundred dollars ($100)." Those allegations suffice to state a claim that FFT pursued a deficiency balance against Ms. Bell as if the debt existed, even though no such deficiency balance had arisen because the creditor informed her that she must pay an excessive (over $100) retaking fee to redeem her repossessed vehicle to avoid its sale. Similarly sufficient to state a claim is Ms. Bell's allegation that the "creditor did not notify the District of Columbia Metropolitan Police Department [MPD] after taking the vehicle," an allegation that implicates 16 D.C.M.R. § 340.4.[22] With that allegation and the reference to 16 D.C.M.R. § 340.5 ("A deficiency does not arise unless the holder has complied with all of the requirements of §§ 340 through 349"), the complaint sufficiently states a claim that, because the notice requirements of §§ 340 through

---

[22] In his partial dissent, our colleague reasons that we should consider only whether Ms. Bell's DCL claim as a whole passes muster, not whether a particular theory does so. We might agree with that as an ordinary matter, but because FFT filed a petition for rehearing in which it specifically argued that Ms. Bell's claim based on the alleged lack of notice to the MPD cannot survive, we choose to address it.

349 were not satisfied, FFT, in violation of D.C. Code § 28-3814(f)(5), made a "false representation or implication of the character, extent, or amount of [the] consumer debt" when it filed suit in Small Claims Court on behalf of FISC asserting that Ms. Bell owed the deficiency debt. We are satisfied that in these respects the fourth count includes more than "[t]hreadbare recitals of the elements of a cause of action" and more than "mere conclusory statements." *Sundberg v. TTR Realty, LLC*, 109 A.3d 1123,1129 (D.C. 2015) (quoting *Iqbal*, 556 U.S. at 678).

Though it is a closer question, we are satisfied that Ms. Bell's complaint also sufficiently states a claim that FFT violated D.C. Code § 28-3814(g)(4) by attempting "to collect a[] . . . charge, fee, or expense incidental to the principal obligation [that was not] . . . legally chargeable to the consumer." The complaint alleges that per the explanation-of-deficiency letter attached to the Small Claims Court complaint filed by FFT, Ms. Bell was "charged $850 for the retaking of the Vehicle." Through the Small Claims complaint, FFT sought to recover that amount on behalf of FISC. Although AFRA does not state that a retaking fee charged post-vehicle-sale as part of the deficiency judgment is unreasonable if it exceeds $100, the substantial difference between the $100 retaking-fee cap that applies at the redemption stage and the $850 that FISC charged at the redemption stage and then carried over to the post-sale stage is a plausible (albeit far from conclusive) basis for inferring that the retaking fee that FFT sought to recover through the Small Claims

action was unreasonable, in violation of 16 D.C.M.R. § 345.2(b).[23]  We need not resolve at this stage whether $100 is actually a valid benchmark for a retaking fee included in a post-sale deficiency balance.  *Cf. Cina v. Cemex, Inc.*, Civ. No. 4:23-CV-00117, 2025 U.S. Dist. LEXIS 153044, at *10-18 (S.D. Tex. Aug. 8, 2025) (concluding, in suit alleging that an ERISA plan fiduciary had charged an unreasonable recordkeeping fee, that the plaintiff "made sufficient allegations to proceed with discovery" and that whether a comparator was a valid benchmark was a factual dispute "better resolved as the case moves forward with the benefit of discovery"); *Bangalore v. Froedtert Health, Inc.*, No. 20-cv-893-pp, 2025 U.S. Dist. LEXIS 133137, at *20 (E.D. Wisc. July 14, 2025) (at the pleading stage, "[t]he plaintiff may create an inference of unreasonable fees by pleading examples of comparator plans with lower recordkeeping fees.").[24]

---

[23] The regulations distinguish the cost of retaking from storage costs and the cost of putting the vehicle in saleable condition, *see* 16 D.C.M.R. §§ 342.2(c) and 345.2(b), and there is no obvious reason why the reasonable cost of retaking (primarily towing costs, we assume) should differ because the retaken vehicle was sold rather than redeemed.  *See Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief . . . requires the reviewing court to draw on its judicial experience and common sense.").

[24] As to Ms. Bell's allegation that FFT violated other paraphrased provisions of D.C. Code § 28-3814(c), (f), (g), and (z) not discussed above, the complaint is bereft of factual allegations that could nudge the claims from possible to plausible. We also note that Subsection 28-3814(z) had not been enacted at the time of the conduct in issue here.

FFT argues that even if Ms. Bell sufficiently pled the other elements of her DCL claim, she "failed to plead facts to support an inference that [FFT] acted willfully, as was required by the DCL in 2017 when [FFT] represented FISC in its lawsuit against [Ms.] Bell."[25]  The background of this argument is, as FFT's brief notes, that the Council amended the DCL in 2022 by deleting subparagraph (j), which had provided that "[p]roof, by substantial evidence, that a creditor or debt collector has wil[l]fully violated any provision of the [DCL] shall subject such creditor or debt collector to liability to any person affected by such violation for all damages proximately caused by the violation."  D.C. Code § 28-3814 (2017), *amended by* Protecting Consumers from Unjust Debt Collection Practices Amendment Act of 2022, D.C. Law 24-154, § 2, 69 D.C. Reg. 11400 (2022).  For her part, Ms. Bell argues that the repeal applies retroactively to her claims, such that she need not prove that FFT acted willfully to prevail.

The repeal does not apply retroactively.  We presume that "legislation that affects substantive rights"—i.e., that "changes the legal consequences of acts

---

[25] The complaint does allege that FFT acted "willfully," acted "[with] full knowledge of its noncompliance," and committed "knowing and intentionally reckless acts," but we agree with FFT that conclusory allegations such as these fall short of pleading facts to support an inference that FFT acted willfully. *See Bereston v. UHS of Del., Inc.*, 180 A.3d 95, 99 (D.C. 2018) (explaining that "allegations of motive, animus, purpose, knowledge, intent and the like" must be supported by well-pleaded factual allegations).

completed before its effective date"—will "operate only prospectively." *Lacek v. Wash. Hosp. Ctr. Corp.*, 978 A.2d 1194, 1197 (D.C. 2009) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269 n.23 (1994)).[26] The 2022 amendment did not merely "alter[] the procedure by which a [DCL plaintiff] may obtain [her] objectives," *Holzsager v. D.C. Alcoholic Beverage Control Bd.*, 979 A.2d 52, 58 (D.C. 2009) (internal quotation marks omitted), but also "increase[d] [a debt collector's] liability for past conduct," *id.* at 57 (internal quotation marks omitted), making a debt collector potentially liable for damages caused by conduct that was committed inadvertently or negligently but not willfully. We readily conclude that the 2022 amendment effected a substantive rather than procedural change and therefore may not be applied retroactively in this case, which is based on FFT's alleged pre-2022 conduct. We thus agree with FFT that Ms. Bell must prove willfulness to prevail on her DCL claim for actual damages.

Here, of course, in the motion-to-dismiss context, we are concerned with whether Ms. Bell's complaint sufficiently pled that FFT acted willfully. The complaint alleges that FFT pursued recovery of a purported deficiency debt even

---

[26] By contrast, "laws which provide for changes in procedure may properly be applied to conduct which predated their enactment." *Id.* (quoting *Duvall v. United States*, 676 A.2d 448, 450 (D.C. 1996)).

though (as shown on an attachment to the Small Claims complaint[27]) the creditor had demanded that Ms. Bell pay the $850 retaking fee to redeem the vehicle before it was sold. Given that the $850 fee is shown plainly on the papers attached to the Small Claims complaint and that it substantially exceeds the $100 "total ordinary expenses of retaking" referenced in the vehicle-repossession regulations, we are satisfied that Ms. Bell's complaint states an at-least plausible claim that FFT acted willfully when it instituted the Small Claims action to recover a claimed deficiency that was barred because the creditor had demanded an unreasonable redemption fee. In addition, construing the complaint liberally in favor of Ms. Bell and taking as true at this juncture her allegation that the "creditor did not notify the [MPD] after taking the vehicle," we are satisfied that the Small Claims collection complaint referenced in Ms. Bell's complaint supports an inference that FFT (a law firm that the complaint alleges "regularly files lawsuits . . . to collect debts . . . relating to deficiency amounts alleged after repossession and sale of automobiles" and "regularly practice[s] in this area of the law") acted willfully in filing the Small Claim action with knowledge that notice to the MPD about the repossession of Ms. Bell's vehicle was required but had not been given. That inference is supported by the fact that

---

[27] In our review of a Rule 12(b)(6) dismissal, we may consider "documents that were referenced in the complaint and are central to [the plaintiff's] claim." *Chamberlain v. Am. Honda Fin. Corp*., 931 A.2d 1018, 1025 (D.C. 2007) (internal quotation marks omitted).

FFT attached to the Small Claims complaint the notices required by 16 D.C.M.R. §§ 341.1 and 341.2 (notice of intent to repossess and actions required to cure the default) and 16 D.C.M.R. § 341.4 (notice of right to redeem repossessed vehicle and location where vehicle is stored), but did not attach documentation of the police report required by 16 D.C.M.R. § 340.4.[28]

## 2.  Res judicata

Now that we have determined that Ms. Bell has plausibly alleged a violation of the DCL, we must consider a remaining issue: whether her DCL claims against FFT are barred by res judicata.  As we have explained, "[i]n determining whether *res judicata* applies, [w]e consider (1) whether the claim was adjudicated finally in the first action [here, the Small Claims action]; (2) whether the present claim is the same as the claim which was raised or which might have been raised in the prior proceeding; and (3) whether the party against whom the plea is asserted was a party or in privity with a party in the prior case."  *Price v. Indep. Fed. Sav. Bank*, 110 A.3d 567, 571 (D.C. 2015) (second alteration in original) (quoting *Calomiris v. Calomiris*,

---

[28] In light of our conclusion that Ms. Bell adequately pled a willful violation of the DCL, we need not address whether, without the same, her DCL count could survive on the basis of her prayers for injunctive, declaratory, and/or equitable relief.

3 A.3d 1186, 1190 (D.C. 2010)). The remand we ordered in *Bell III* was for the Superior Court to focus on the third element of res judicata, privity.

Courts have acknowledged that "[t]he term 'privity' is an elusive concept, without any precise definition of general applicability." *Jefferson Sch. of Soc. Sci. v. Subversive Activities Control Bd.*, 331 F.2d 76, 83 (D.C. Cir. 1963); *see also Buechel v. Bain*, 766 N.E.2d 914, 920 (N.Y. 2001) ("[P]rivity is an amorphous concept not easy of application . . . ." (internal quotation marks omitted)). This case amply demonstrates the difficulty of applying the concept. We also note that courts have reached conflicting conclusions about whether lawyers who successfully represented creditor clients in consumer-debt collection actions have the benefit of res judicata when the consumers against whom judgments were entered in the debt-collection actions sue the creditors' lawyers alleging deceptive conduct in pursuit of debt collection.[29] But in this case we are both assisted and bound by the instructions

---

[29] *Compare Green v. Ford Motor Credit Co.*, 828 A.2d 821, 838-39 (Md. Ct. Spec. App. 2003) (defendant law firm represented the motor credit company in debt-collection matters; holding that debtors' suit against the law firm under the Maryland Consumer Debt Collections Act (MCDCA), for allegedly filing collection actions despite knowledge that the company's vehicle-repossession notices violated the MCDCA, was barred by res judicata based on the consent judgment entered against the debtors in the collection actions), *with Lannan v. Levy & White*, 186 F. Supp. 3d 77, 87-88 (D. Mass. 2016) (rejecting argument that law firm was in privity with creditor that it represented in small claims action for purposes of res judicata), *and Balk v. Fererstein & Smith, LLP*, No. 09CV249A, 2011 WL 1560984, 2011 U.S.

in *Bell III*, in which this court aligned itself with courts that have held that privity between an attorney and client does not exist in every attorney-client relationship, that a common objective to obtain a favorable outcome is not enough, and that privity requires that the lawyer and client have a "mutuality of . . . *legal* interests." *Bell III*, 285 A.3d at 511 (italics added). Accordingly, *Bell III* instructed the Superior Court that to determine whether FFT and FISC were in privity, the court would need to analyze "the mutuality of their legal interests." *Id.* *Bell III* applied this court's statements in *Patton v. Klein,* 746 A.2d 866, 870 (D.C. 1999), and other cases that "[a] privy is one so identified in interest with a party to the former litigation that he or she represents precisely the same legal right in respect to the subject matter of the case." *Id.* at 509 (quoting *Patton*, 746 A.2d at 870); *see also Lane v. Bayview Loan Servicing, LLC*, 831 S.E.2d 709, 715 (Va. 2019) ("Privity . . . *does not embrace relationships between persons or entities*, but rather it deals with a person's *relationship to the subject matter of the litigation*.") (internal quotation marks omitted).

---

Dist. LEXIS 44203 at *14-15 (W.D.N.Y. Feb. 18, 2011) (attorney was "not in privity with [client] in the underlying proceeding" because client's "interest was in collecting an alleged debt" while the lawyer's "interest was in providing legal representation" to the client), *adopted by* No. 09-CV-249A, 2011 U.S. Dist. LEXIS 44200, 2011 WL 1557948, at *1 (W.D.N.Y. Apr. 25, 2011).

The Superior Court concluded on remand that FFT and FISC were in privity because of their contingent-fee compensation agreement, which FFT provided to the court.[30]  The court reasoned:

> Here, FISC and [FFT] had a mutual interest in recovery of the deficiency from Ms. Bell.  The representation agreement between FISC and [FFT] stipulated that FISC would assign delinquent accounts to [FFT] and [FFT] would be entitled to a 30% commission on any sums recovered.  [FFT's] commission is not contingent upon [FFT] filing a suit on FISC's behalf . . . The representation agreement unites FISC's and [FFT's] interests more than even in a standard contingency agreement.  Moreover, where [FFT] did bring a suit against buyers, FISC's sought-after recovery was purely monetary, meaning that FISC did not have any interest in recovery which [FFT] did not share.  [FFT's] and FISC's purely monetary interests combined with their enhanced contingency representation agreement establishes a mutuality of interests with respect to Ms. Bell's claims.
>
> A litmus test for mutuality is whether a litigant would have been bound by a prior decision which reached the opposite result.  Applied here, the question is whether, if FISC's suit against Ms. Bell in 2017 to recover the deficiency was unsuccessful, [FFT] would have been able to assert its own claim against Ms. Bell to recover the deficiency.  It would not. [FFT's] property interest in recovering a deficiency against Ms. Bell for her unpaid car loan was fully

---

[30] Ms. Bell argues that because the Superior Court considered evidence outside the pleadings—the compensation agreement between FFT and FISC—it should have converted FFT's motion to dismiss on res judicata grounds to a motion for summary judgment and afforded her an opportunity for discovery pursuant to Super. Ct. Civ. R. 56(d).  Because we decide the res judicata issue in Ms. Bell's favor, we need not address this argument.

> represented by FISC. Had [FFT] tried to bring a second claim as party plaintiff after FISC was unsuccessful, Ms. Bell would have been entitled to raise a defense of *res judicata*. This further confirms the mutuality of FISC's and [FFT's] interest in the recovery of a deficiency.
>
> Because privity exists between [FFT] and FISC with respect to Ms. Bell's claims, [FFT] is entitled to assert *res judicata* on the same grounds as FISC did in *Bell I*.

Thus, the Superior Court reasoned that FFT and FISC were in privity because they had "a shared economic interest in the outcome of the litigation"—specifically, "a mutual interest in recovery of the deficiency from Ms. Bell."

We conclude that the Superior Court departed from the remand instructions by focusing on FFT's and FISC's mutual interest in *recovery of funds* from Ms. Bell rather than on whether they had a mutual interest in the deficiency debt itself, which was "the subject matter of the [Small Claims] case." *Patton*, 746 A.2d at 870 (internal quotation marks omitted). The record that was before the Superior Court established that as between FFT and FISC, only FISC had a "legal right [with] respect to [that] subject matter." *Id.* Despite the Superior Court's reference to FISC's "assign[ment] [of] delinquent accounts to [FFT]"—by which the Superior Court seems to have meant the referral of accounts to FFT, rather than a true

assignment of accounts[31]—the contingent-fee agreement that is in the record indicates explicitly that FFT was granted no legal interest in FISC's accounts. The agreement states that:

> All Accounts placed . . . with Contractor [i.e., FFT] are, and shall remain, the exclusive property of the FISC Entities.  FISC shall place Accounts with Contractor at its sole discretion . . . .  Contractor shall acquire no right, title, or interest in any Accounts placed with Contractor.

Similarly, the agreement states that:

> FISC shall have the absolute right to recall any Account placed with Contractor at any time, for any reason, in its sole discretion, with or without cause. . . . Contractor shall not be entitled to any . . . compensation . . . in respect of a Recalled Account on or after the date that such Account constitutes a Recalled Account.

The agreement also establishes that an account can be recalled in the middle of litigation.  Taken together, these provisions of the FFT/FISC compensation agreement indicate that FFT had no legal interest in the debt; rather, FFT had a legal interest that came into play only after there was a recovery on the debt.  Thus, FISC

---

[31] There may have been a true assignment in the sense of "an anticipatory assignment to the attorney of a portion of the client's income from any litigation recovery."  *Comm'r v. Banks*, 543 U.S. 426, 434 (2005).  But as the Supreme Court observed in *Banks*, "[t]he contingent-fee lawyer [is not] a joint owner of his client's claim in the legal sense any more than the commission salesman is a joint owner of his employer's accounts receivable."  *Id.* at 436 (second alteration in original) (internal quotation marks omitted).

and FFT had different legal interests in respect to the subject matter of the Small Claim action.[32]

The Superior Court accorded significance to the fact that if FISC's suit against Ms. Bell to recover the deficiency had been unsuccessful, FFT would not have been able to assert its own claim against Ms. Bell to recover the deficiency. That is true, but the reason is not the bar of res judicata; instead, the reason is that, in light of FFT's lack of legal interest in the deficiency debt, Ms. Bell owed no money to FFT that could have provided a basis for FFT to sue Ms. Bell. To be sure, FFT, "the adverse party now seeking to secure the benefit of the former adjudication[,] would [have been] prejudiced . . . if [the Small Claims action had been] determined the other way." *See D.C. Redev. Land Agency v. Dowdey*, 618 A.2d 153, 163 (D.C.

---

[32] The fact that FFT did not have the same legal interest that FISC had makes this case unlike cases such as *Carr v. Rose*, 701 A.2d 1065, 1067, 1070, 1073 (D.C. 1997) (holding that, based on privity, the doctrine of claim preclusion barred the current action against defendants who, just like deceased partner Schmidt, held partnership interests in a post-merger consolidated law firm but had not been members of the "original" law firm that had signed a lease, which the landlord had sought unsuccessfully to enforce against Schmidt's estate), and *Benefit Res. Grp. v. Westfield Ins. Co.*, No. 2:11-CV-64, 2013 WL 1813963 at *4-5, 2013 U.S. Dist. LEXIS 60368, at *13-14 (N.D. Ind. Apr. 26, 2013) (observing, in case involving the right to recover from the insurance contract on a subject property, that "the one who used the building and paid for its insurance, the one who owned it, and the one who insured it in his name[] all . . . have 'a legally recognized interest in the same . . . piece of property'" and could have maintained an action for the insurance proceeds).

1992) (internal quotation marks omitted). But such prejudice is not a sufficient basis for finding that FISC and FFT had the same legal interest in the deficiency debt that was the subject matter of the Small Claim action, so as to trigger application of res judicata under the test prescribed by *Bell III* and *Patton.*

We shall also briefly discuss why Ms. Bell's DCL claims against FFT are not barred by the other branch of res judicata: issue preclusion, or collateral estoppel. *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (explaining that the term "res judicata" can be used to refer to both claim preclusion and issue preclusion/collateral estoppel). We have considered this issue because the lack of privity between FFT and FISC would not render the doctrine of issue preclusion inapplicable. "[T]his jurisdiction permits a defendant in an action to invoke collateral estoppel based on a prior determination rejecting a plaintiff's claim against other parties, even in the absence of privity." *Walker v. FedEx Off. & Print Servs.*, 123 A.3d 160, 165 (D.C. 2015); *see also Carr*, 701 A.2d at 1076 ("[A] stranger to the first action may invoke issue preclusion against a party to that action. Hence the . . . defendants, while not privy to the prior dispute, are not thereby necessarily prevented from asserting defensive 'non-mutual' collateral estoppel." (citation omitted)).

Collateral estoppel, or issue preclusion, "may be invoked defensively by a defendant who was not a party to the original proceedings, to prevent a plaintiff from

relitigating an issue that the plaintiff had previously litigated unsuccessfully." *Walker*, 123 A.3d at 164. We have cautioned, however, that issue preclusion applies to bar relitigation of an issue of fact or law only when "the issue is actually litigated." *Id.* (internal quotation marks omitted). Here, as Ms. Bell emphasizes, the Small Claims Court judgment was a consent judgment, entered pursuant to the terms of the settlement/stipulation between FISC and Ms. Bell, raising the question of whether the issue of FISC's entitlement to recover the deficiency debt was actually litigated. Courts have held that whether a consent judgment satisfies the "actually litigated" element depends on the parties' intent as manifested by the record. *See Richardson v. Ala. State Bd. of Educ.*, 935 F.2d 1240, 1245 (11th Cir. 1991) ("[T]he nature of consent decrees forces a twist in th[e] [issue-preclusion] analysis because the second requirement, actual litigation, is always missing when cases are settled. The proper analysis . . . is whether the parties specifically agreed to preclude a given issue." (internal quotation marks and citations omitted)).[33] "[T]he central inquiry in determining the preclusive effect of a consent judgment is the intention of the parties as manifested" in the judgment or decree or otherwise. *In re Halpern*, 810 F.2d 1061,

---

[33] *See also* Restatement (Second) of Judgments § 27 cmt. e (Am. L. Inst. 1982) ("In the case of a judgment entered by . . . consent, . . . none of the issues is actually litigated. . . . The judgment may be conclusive, however, with respect to one or more issues, if the parties have entered an agreement manifesting such an intention.").

1064 (11th Cir. 1987). "Intent may be inferred from the words of the agreement or the record." *Richardson*, 935 F.2d at 1245.

The Small Claims Court consent judgment makes no factual findings other than declaring that Ms. Bell was obligated to pay FISC the balance of the claimed deficiency debt. Further, the wider record in the Small Claims action does not permit an inference that Ms. Bell intended to waive any defenses she might have to the debt-collection action. She moved to vacate the judgment, and in her reply to FISC's opposition to the Motion to Vacate specifically asserted that she signed the stipulation "unaware of any purported waiver." On this record, we cannot conclude, for purposes of issue preclusion, that the issue of whether the amount of the deficiency debt was falsely represented or overstated was actually litigated and resolved in FISC's favor such that the claim is barred against FFT. Accordingly, Ms. Bell's DCL claims are not barred by collateral estoppel.

### E.    Abuse of Process

The fifth and final count of Ms. Bell's complaint alleges that FFT instituted a lawsuit (the Small Claims Court action) for the purpose of coercing Ms. Bell to pay an alleged debt that was not owed and in order to convert a barred deficiency debt to an enforceable judgment; abused or perverted the judicial process by making false claims and filing fraudulent verifications of debt to obtain a settlement to pay a debt

that was not owed; and abused the judicial process by filing a fraudulent affidavit stating that the amount alleged in the Small Claims Court complaint was a true statement of the amount owed.

In our jurisdiction, the test for determining when a cause of action for abuse of process will lie is whether "the process has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be required to do." *Morowitz v. Marvel*, 423 A.2d 196, 198 (D.C. 1980) (quoting *Jacobson v. Thrifty Paper Boxes, Inc.*, 230 A.2d 710, 711 (D.C. 1967)). That a party may have an ulterior motive, such as coercion, for pursuing litigation that is within the regular purview of the process is not sufficient to sustain a claim for abuse of process. *See Nolan v. Allstate Home Equip. Co.*, 149 A.2d 426, 430 (D.C. 1959) ("The mere bringing of suit even with an ulterior motive of coercion does not of itself constitute malicious abuse of process."); *Geier v. Jordan*, 107 A.2d 440, 441 (D.C. 1954) (complaint failed to state a claim for malicious abuse of process where it "alleged only a wrongful purpose" and "failed entirely to charge any act on the part of appellee by which the judicial process was perverted"). To state a claim for abuse of process, "in addition to ulterior motive, one must allege and prove that there has been a perversion of the judicial process and achievement of some end not contemplated in the regular prosecution of the charge," *Morowitz*,

423 A.2d at 198; i.e., a "perversion of the court process to accomplish an end which the process was not intended to bring about," *Hall v. Hollywood Credit Clothing Co.*, 147 A.2d 866, 868 (D.C. 1959). Thus, "knowingly br[inging] suit on an unfounded claim . . . by itself is not an abuse of process."[34] *Hall*, 147 A.2d at 868. But, for example, pursuing an "attachment upon a judgment at a time when there was no judgment outstanding was an abuse of process, because appellee thereby forced appellant to do something which it could not otherwise legally and regularly compel her to do." *Id.* (footnote omitted).

We agree with the Superior Court that Ms. Bell's complaint failed to state a claim for abuse of process. As the Superior Court aptly put it, the complaint does not allege that FFT sought to coerce Ms. Bell into "tak[ing] some action other than paying FISC money." Ms. Bell's allegation that FFT filed a lawsuit against her to collect a deficiency debt (albeit a debt that she contends she did not owe) is in effect an acknowledgement that FFT filed the Small Claims action for its intended purpose, rather than "for an immediate purpose other than that which it was designed to

---

[34] Thus, Ms. Bell's allegation that FFT routinely filed false verifications of un-owed debts and engaged in "junk debt laundering" does not suffice to state a claim for abuse of process.

accomplish." Restatement (Second) of Torts § 682 cmt. b (Am. L. Inst. 1977); *see also Martin v. Trevino*, 578 S.W.2d 763, 769 (Tex. Civ. App. 1978).

### F.    Conclusion

For the foregoing reasons, we reverse that portion of the Superior Court's order dismissing the DCL count of Ms. Bell's complaint, but otherwise affirm the judgment of dismissal. The case is remanded for further proceedings. It is

*So ordered.*

SHANKER, *Associate Judge*, concurring in part and dissenting in part: I agree with the majority that, for the reasons it cogently provides, the trial court correctly dismissed under Rule 12(b)(6) Ms. Bell's AFRA, UCC, CPPA, and abuse-of-process claims. I also agree that neither claim preclusion nor issue preclusion bars Ms. Bell's DCL claim. And I agree with the majority that the trial court erred by dismissing Ms. Bell's DCL claims in their entirety (although I offer below some additional reasoning in support of the majority's conclusion). I therefore join those portions of the majority opinion.

But because I believe the majority leaves intact one DCL claim that the trial court correctly dismissed, I dissent in part.

## I.     Ms. Bell Has Stated a Claim Under Section 28-3814(f)

I begin with a point on which the majority and I agree—that Ms. Bell has alleged a plausible claim for relief under D.C. Code § 28-3814(f) (barring "any unfair, fraudulent, deceptive, or misleading representation, device, or practice to collect a consumer debt . . . in any way, including [a list of enumerated practices]").[1] I write separately to explain in further detail why FFT's act of filing a lawsuit qualifies as an "unfair, fraudulent, deceptive, or misleading representation, device, or practice" even though the complaint filed by FFT stated that the deficiency amount sought was "exclusive of all set-offs and just grounds of defense."

At bottom, Ms. Bell's allegation of wrongdoing by FFT is as follows. She asserts that (1) FISC did not comply with AFRA; (2) FFT knew that FISC had not complied with AFRA and therefore knew that Ms. Bell did not owe FISC a

---

[1] The version of the DCL in effect at the time of the events that led to this lawsuit used slightly different phrasing—it forbade "any fraudulent, deceptive, or misleading representation or means to collect or attempt to collect claims." D.C. Code § 28-3814(f) (2017). It also used "in any of the following ways" in place of "in any way, including" and did not include some specific listed practices—such as, as will become relevant later, the filing of a lawsuit to collect a debt that the collector knew or should have known was barred by the statute of limitations. *Compare* D.C. Code § 28-3814(f) (as amended in 2022), *with* D.C. Code § 28-3814(f) (2017). But because FFT neither (1) argues that these differences represent substantive changes in the statute (as opposed to an effort to clarify what the statute already covered) nor (2) contends that applying these portions of the current version of the statute to it would violate the presumption against retroactivity, I do not consider those points.

deficiency; and (3) FFT nevertheless filed a lawsuit in the hope that Ms. Bell—an unrepresented litigant—would not recognize that FISC's claim was barred.

I agree with the majority that Ms. Bell has plausibly alleged that FFT engaged in the above course of conduct. Regarding the first prong, it appears from the face of the small-claims complaint filed by FFT that FISC violated AFRA by sending a notice to Ms. Bell stating that if she wished to redeem her vehicle, she had to pay $850 in repossession expenses and $10 per day in storage fees. *See* 16 D.C.M.R. § 342.2 (limiting permissible charges associated with the right to redeem a repossessed vehicle to $100 in repossession expenses and $3 per day in storage fees).[2] And, as a reminder, a violation of AFRA precludes a creditor from recovering a deficiency amount. 16 D.C.M.R. § 340.5.

---

[2] The majority identifies multiple violations of AFRA that in its view could plausibly undergird Ms. Bell's claim under D.C. Code § 28-3814(f). But because, in my view, a court reviewing a complaint under Rule 12(b)(6) should consider only whether a claim as a whole passes muster—and not whether a particular theory or part of a claim suffices—I find it unnecessary to address whether other violations of AFRA by FISC are plausibly alleged. *See A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 82 (1st Cir. 2013) ("[T]he plausibility standard should be applied to the claim as a whole. . . . Rule 8(a)(2), which is the font from which the plausibility standard springs[,] . . . speaks only in terms of 'the claim' . . . ." (citation omitted)); *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 587 (7th Cir. 2021) ("Since a motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissal of *parts* of claims, our inquiry is limited to only whether Bilek's complaint includes factual allegations that state a plausible claim for relief." (citation modified)).

Turning to prong two, no one could reasonably claim that FFT did not know the facts alleged in a complaint that it filed. And I agree with the majority that one can reasonably infer FFT's knowledge of AFRA's requirements (and of the effect of noncompliance with AFRA on FISC's ability to recover a deficiency) from FFT's status as, according to Ms. Bell's complaint, a law firm that "regularly practice[s] in this area of the law." Lawyers bear a duty to investigate the merits of their client's claim—a duty that, in the repossession context, surely extends to checking whether one's client has complied with the regulations governing whether a deficiency may be collected. *See Simpson v. Chesapeake & Potomac Tel. Co.*, 522 A.2d 880, 884 (D.C. 1987) ("Before filing a civil action, an attorney has a duty under Rule 11 to make an investigation to ascertain that the claim has merit . . . ."); Super. Ct. Sm. Cl. R. 2 (indicating that Superior Court Rule of Civil Procedure 11 applies in the Small Claims and Conciliation Branch); *In re Ekekwe-Kauffman*, 210 A.3d 775, 788 (D.C. 2019) (per curiam) (explaining that "a lawyer who fails to investigate and research her client's potential legal claims" may violate the District's ethical rules).

Finally, with respect to prong three, no one disputes that FFT filed a lawsuit seeking to collect a deficiency from Ms. Bell. I thus find it plausible that FFT complied with its duty to check whether FISC's repossession complied with AFRA,

discovered that it had not, and then filed a small-claims complaint anyway in the hope that Ms. Bell would not realize that she had a meritorious defense.[3]

But whether the above course of action qualifies as "misleading" under § 28-3814(f) is a separate—and harder—question. Nowhere in its small-claims complaint did FFT assert that Ms. Bell had no meritorious defenses. To the contrary, FFT included alongside its complaint an affidavit stating that the deficiency amount sought was "exclusive of all set-offs and just grounds of defense." That language raises a question of statutory interpretation—can the filing of a debt-collection lawsuit that the lawyer knows is barred on its face by virtue of a defense qualify as "misleading" under § 28-3814(f) if the lawsuit's complaint acknowledges that a defense *might* affect FISC's ability to recover? For three reasons, I conclude that the answer is yes.

---

[3] Given my belief that Ms. Bell has plausibly alleged that FFT knew that the deficiency it sought to collect was barred by AFRA, I agree with the majority that Ms. Bell has plausibly alleged a willful—i.e., not accidental—violation of the DCL sufficient to pass the willfulness bar present in the version of the DCL in effect in 2017. *See Bryan v. United States*, 524 U.S. 184, 191 (1998) (explaining that willfulness "[m]ost obviously . . . differentiates between deliberate and unwitting conduct."). Although willfulness "in the criminal law" has sometimes been held to require that the defendant acted with knowledge that his conduct was unlawful, *id.*, (1) this is a civil case and (2) FFT has not argued that the drafters of the then-in-effect version of the DCL intended to import a criminal law definition into the civil context. Indeed, FFT offers no argument as to the substantive meaning of the word "willful" in the version of the DCL in effect in 2017.

First, both the current and then-in-effect versions of the DCL prohibit not only false representations but also false "implication[s]." D.C. Code § 28-3814(f)(5); *id.* (2017). Given lawyers' obligation to investigate the merit of the claims they bring, FFT's filing of a lawsuit to collect a deficiency certainly implies that Ms. Bell owes a deficiency—an implication that is incorrect based on the violation of AFRA apparent on the face of the small-claims complaint.

Second, the DCL's recognition that implications can be misleading fits neatly with a related consumer-protection statute—the CPPA. *Cf. Edwards v. United States*, 583 A.2d 661, 664 (D.C. 1990) ("When the meaning of a word in a statute is doubtful, it is appropriate to refer to related legislation to determine the sense in which the word was employed in the particular statute." (citation modified)). In the CPPA context, we have held that a retailer's placement of a product—even in the absence of an affirmative statement regarding that product's quality—can be considered misleading based on what that placement might imply to consumers. *Ctr. for Inquiry Inc. v. Walmart, Inc.*, 283 A.3d 109, 118-20 (D.C. 2022). We have said that small print (such as FFT's statement that the deficiency amount it sought to collect was exclusive of just defenses) does not render such implications not misleading as a matter of law. *See id.* at 121. And we have stated that the CPPA reaches not only "literal falsehoods," but also "omissions, innuendos, or ambiguities that have a tendency to mislead." *Earth Island Inst. v. Coca-Cola Co.*, 321 A.3d

654, 664 (D.C. 2024) (citation modified). Viewed in this context, it makes sense that the DCL would reach conduct like that in which FFT is alleged to have engaged.

Third, a provision of the current version of the DCL enumerates a form of the theory on which Ms. Bell relies. Section 28-3814(f)(10) identifies the following practice as misleading: "initiating a cause of action to collect a consumer debt when the debt collector knows or reasonably should know that the applicable statute of limitations period has expired." Thus, the current version of the DCL recognizes that the filing of a lawsuit—one that a debt collector knows or should know is barred by a defense—can be misleading.[4]

For the above reasons, I agree with the majority that the trial court erred by dismissing Ms. Bell's claim under § 28-3814(f).

---

[4] I recognize that this case involves AFRA, not the statute of limitations. But because the AFRA violation I outline above, like a prototypical statute of limitations defense, is apparent from the face of FFT's complaint, I see no reason to carve out Ms. Bell's theory of liability from the DCL on that basis. Nor do I see any merit in the argument that the DCL, by naming only the statute of limitations defense, intended to immunize debt collectors who filed lawsuits knowing that other facially apparent defenses precluded the collection of the sued-upon debt. The current version of the DCL uses the word "including" before its list of enumerated practices, D.C. Code § 28-3814(f), and we presume that the use of "including" renders a statutory list illustrative rather than exhaustive, *Conrad v. D.C. Alcoholic Beverage Control Bd.*, 287 A.3d 635, 647 (D.C. 2023).

## II.     Ms. Bell Has Not Stated a Claim Under Section 28-3814(g)(4)

The majority separately holds that Ms. Bell has stated a plausible claim for relief under D.C. Code § 28-3814(g)(4) (barring an "attempt to collect any interest or other charge, fee, or expense incidental to the principal obligation unless [it is] legally chargeable to the consumer"). I agree that Ms. Bell has plausibly alleged that *FISC*, by demanding that Ms. Bell pay amounts in excess of the ceilings set by 16 D.C.M.R. § 342.2 to redeem her vehicle, violated this provision. But as the majority acknowledges, the complaint does not allege that *FFT* played any part in FISC's violation. Instead, FFT's first alleged action—filing the small-claims complaint against Ms. Bell—occurred *after* Ms. Bell's time to redeem her vehicle had expired. Because Ms. Bell does not plausibly allege that FFT was involved in the redemption process, Ms. Bell cannot have stated a § 28-3814(g)(4) claim against FFT based on fees charged during that process.

Instead, Ms. Bell's § 28-3814(g)(4) claim must be based on fees that FFT sought to collect in the lawsuit that it filed—i.e., post-sale fees. And here again Ms. Bell runs into a wall. The $100 ceiling for repossession expenses set forth in 16 D.C.M.R. § 342.2 limits only the fees that may be charged when a buyer redeems their repossessed vehicle, not the fees that may be charged once the buyer's time to redeem lapses and the vehicle is sold. *See* 16 D.C.M.R. § 342.1 (setting forth what

a buyer must do to redeem a vehicle); *id.* § 342.2 (establishing that "[c]harges *under § 342.1*[ ] shall not exceed" certain enumerated ceilings (emphasis added)).  By contrast, 16 D.C.M.R. § 345—which identifies the repossession expenses that may be covered by the proceeds of a repossessed vehicle's *sale* prior to those proceeds' application to the amount owed by the buyer—contains no hard ceiling on retaking fees; it requires only that the fee charged by the debt collector be "actual and reasonable."  So, to state a plausible claim that FFT sought to collect, through the small-claims lawsuit that it filed, an unlawful fee, it is not enough for Ms. Bell to allege merely that the retaking fee alleged in the lawsuit exceeded $100.  Instead, Ms. Bell must plausibly allege that the fee charged—$850—was unreasonable.

She has not done so.  A fee (at least generally speaking) can be unreasonable only in relation to a reference point; to know what an unreasonable price for an apple is, for instance, one has to know what apples typically cost.  And nowhere in her complaint does Ms. Bell allege any facts relating to the typical cost for the repossession of a vehicle in the DMV area.  Absent a plausible point for comparison, I cannot reasonably infer that $850 is an unreasonable fee.  So, I see no plausible claim under § 28-3814(g)(4).

I understand the majority to agree with me (1) that post-repossession fees are not subject to a $100 cap and (2) that to plausibly allege an unreasonable fee,

Ms. Bell must point to a comparator. Where the majority and I part ways is that it believes that 16 D.C.M.R. § 342.2's $100 ceiling on redemption-related retaking fees can serve as the missing reference point against which to assess the reasonableness of the fee that FFT sought to collect through its small-claims suit.

The majority's reasoning relies on an assumption regarding AFRA that does not, in my view, hold up. If indeed AFRA's drafters viewed $100 as a benchmark for what constitutes a reasonable retaking fee in *all circumstances*, there would have been no reason for them to apply that cap only to fees charged in the redemption context. Instead, they could have either (1) included a similar cap in 16 D.C.M.R. § 345 or (2) defined, in the definitions provision of AFRA (16 D.C.M.R. § 399), "reasonable retaking expenses" as "less than or equal to $100." The fact that they did neither of those things suggests that they thought that in contexts other than redemption, a reasonable fee could exceed (and perhaps well exceed) $100. *See Lane v. D.C. Dep't of Hous. and Cmty. Dev.*, 320 A.3d 1044, 1049 (D.C. 2024) ("It is our duty to respect not only what the legislature wrote but, as importantly, what it didn't write." (citation modified) (quoting *Va. Uranium, Inc. v. Warren*, 587 U.S. 761, 765 (2019))). And if that is what the drafters thought, the majority works contrary to the drafters' intent by tying permissible fees outside of the redemption context to a $100 benchmark.

Look at it this way. The drafters might well have cabined retaking fees to $100 in the redemption context not because they thought $100 was satisfactory to allow repossessors to make a living, but instead to disincentivize repossession in situations where the buyer could plausibly redeem the vehicle. Under this view of § 342.2, the $100 cap serves as a check on creditors—go ahead and repossess, it says, but if you're wrong (i.e., if the buyer redeems), you're on the hook for all of the repossessor's charges above $100. If this is the reasoning behind the $100 cap, that cap has little to no value as a reference point for what constitutes a reasonable retaking fee—the cap reflects a legislative judgment not as to what repossession should cost, but instead as to what loss a creditor should bear if it repossesses a car that the buyer was capable of redeeming.

Put simply, absent evidence that AFRA's drafters intended § 342.2's $100 cap to serve as a reference point for what constitutes a reasonable retaking fee in all circumstances, I think that the majority errs by wielding it as such. I would hold that Ms. Bell's claim under § 24-3814(g)(4) should be dismissed.

\* \* \*

I join the majority opinion except for its conclusion that Ms. Bell has stated a plausible claim for relief under D.C. Code § 28-3814(g)(4). With respect to that holding, I respectfully dissent.